SHIRLI F. WEISS (Bar No. 79225)
shirli.weiss@dlapiper.com
KATHERINE J. PAGE (Bar No. 259556)
katherine.page@dlapiper.com
**DLA PIPER LLP (US)**
550 South Hope Street, Suite 2300
Los Angeles, CA 90071-2678
Tel:  213.330.7700
Fax:  213.330.7701

KEARA M. GORDON *(pro hac vice)*
keara.gordon@dlapiper.com
COLLEEN CAREY GULLIVER *(pro hac vice)*
colleen.gulliver@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
Tel:  212.335.4500
Fax:  212.335.4501

Attorneys for Defendant
SOULCYCLE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MARKO CAVKA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>SOULCYCLE, INC., a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>                    Defendants. | CASE NO.  8:16-CV-01821 JLS (KESx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT SOULCYCLE INC. TO DISMISS CLASS ACTION COMPLAINT**<br><br>Fed. R. Civ. Proc. 12(b)(1) and (b)(6)<br><br>Date:          December 2, 2016<br>Time:         2:30 p.m.<br>Judge:        Hon. Josephine L. Staton<br>Ctrm:         10A |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   STATEMENT OF FACTS ................................................................ 4

    A.    SoulCycle's Pay As You Go Class Purchase Structure ...................... 4

    B.    The Plaintiff's Purchase of a Single Class ............................. 6

III.  LEGAL STANDARD ....................................................................... 6

IV.  THE PLAINTIFF'S CLAIM ASSERTING CERTAIN VIOLATIONS
    OF THE HSSA MUST BE DISMISSED. ........................................ 8

    A.    SoulCycle Complied with § 1812.82; It Gave Cavka the
        Contract ............................................................................ 8

    B.    SoulCycle's New Rider Waiver Form Does Not Violate the
        HSSA ............................................................................... 9

V.   CAVKA LACKS STANDING TO SUE FOR THE ALLEGED
    VIOLATIONS OF THE HSSA ......................................................... 9

    A.    Cavka Does Not Have Standing to Sue Under California Law ........... 9

        1.    Cavka Did Not Execute the New Rider Waiver Form, Did
            Not Attend a Class, Was Not Hurt, and Was Not
            Thwarted in An Attempt to Hold SoulCycle Liable ................. 11

        2.    Cavka Has Not Alleged That He Was Disabled, That He
            Sought to Cancel His Class, or That SoulCycle Refused ......... 13

        3.    Cavka Has Not Alleged That He Sought to Cancel His
            Class and SoulCycle Refused .................................... 14

        4.    Cavka Has Not Alleged That He Was Injured Due to
            SoulCycle's Purportedly Improper Font Size For
            Displaying His Contract Length ................................... 15

        5.    Cavka Has Not Alleged That He Was Injured Due to
            SoulCycle's Purported Failure to Give Him His Contract ....... 15

    B.    Cavka Does Not Have Article III Standing ......................... 16

        1.    Cavka's Alleged Injury is Not "Fairly Traceable" to
            SoulCycle's Purported HSSA Violations .......................... 16

        2.    Cavka Has Alleged Only a Bare Procedural Violation,
            Which Does not Confer Standing .................................. 17

VI.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
    UCL .................................................................................... 19

# TABLE OF CONTENTS
### (continued)

Page

A.   Cavka's UCL Claim Must Be Dismissed Because it Is Solely Predicated on Violations of the HSSA, Which Fail............................ 19

B.   In Any Event, Cavka Has Not Alleged Standing Under the UCL ..... 19

VII.   CAVKA DOES NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF UNDER THE UCL .......................................................... 20

VIII.   CONCLUSION ............................................. 21

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alonzo v. Maximus, Inc.*
  832 F. Supp. 2d 1122 (C.D. Cal. 2011) (Staton, J.).................................................. 19

*Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*
  2015 WL 4163008 (C.D. Cal. July 9, 2015) ............................................................... 3

*Ballard v. Bank of Am., N.A.*
  2014 WL 503143 (C.D. Cal. Jan. 28, 2014) (Staton, J.) ................................... 19, 20

*Cody v. SoulCycle, Inc.*
  2016 WL 4771392 (C.D. Cal. January 11, 2016) ............................................. 15, 20

*Davis v. HSBC Bank Nevada, N.A.*
  691 F.3d 1152 (9th Cir. 2012)...................................................................................... 4

*Delarosa v. Boiron, Inc,*
  2012 WL 8716658, at *4 (C.D. Cal. Dec. 28, 2012).................................................. 21

*Do v. Am. Home Mortg. Servicing, Inc.*
  2011 WL 5593935 (C.D. Cal. Nov. 17, 2011) (Staton, J.) ................................... 7, 19

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011)....................................................................................... 20

*Ewing v. SQM US, Inc.*
  2016 WL 5846494 (S.D. Cal. Sept. 29, 2016).................................................... 16, 17

*Forcellati v. Hyland's, Inc.*
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................................ 7

*Gonzalez v. Planned Parenthood of Los Angeles*
  759 F.3d 1112 (9th Cir. 2014)....................................................................................... 7

*In re Google, Inc. Privacy Policy Litig,*
  2015 WL 4317479, at *1 (N.D. Cal. July 15, 2015) ................................................. 17

*In re iPhone Application Litig.*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)...................................................................... 16

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**<u>Page</u>**

*Jamison v. Bank of Am. N.A.*
　　2016 WL 3653456 (E.D. Cal. July 7, 2016)..........................................17, 18

*Kissel v. Code 42 Software, Inc.*
　　8:15-CV-01936 (C.D. Cal. Apr. 14, 2016) (Staton, J.)............................ 20

*Marino v. Countrywide Fin. Corp.*
　　26 F. Supp. 3d 955, 960 (C.D. Cal. 2014) (Staton, J.)............................. 7

*Nokchan v. Lyft, Inc.*
　　2016 WL 5815287 (N.D. Cal. Oct. 5, 2016) ........................................17, 18

*Robbins v. Hyundai Motor Am.*
　　2014 WL 4723505 (C.D. Cal. Aug. 7, 2014) (Staton, J.)......................... 6

*Ruiz v. Bally Total Fitness Holding Corp.*
　　447 F. Supp. 2d 23 (D. Mass. 2006)..............................................3, 11, 12

*Spokeo, Inc. v. Robins*
　　136 S. Ct. 1540 (2016)......................................................................16, 17

*Thieme v. Cobb*
　　2016 WL 3648531 (N.D. Cal. July 8, 2016) ......................................... 19

*Tigbao v. QBE Fin. Inst. Risk Servs., Inc.*
　　2014 WL 5033236 (C.D. Cal. 2014) (Staton, J.)..................................... 21

*Wang v. OCZ Tech. Grp. Inc.*
　　276 F.R.D. 618 (N.D. Cal. 2011) ......................................................... 21

*Wendt v. 24 Hour Fitness USA, Inc.*
　　2015 WL 1344819 (N.D. Tex. Mar. 24, 2015)................................3, 10, 13

*Yagman v. Bray*
　　2015 WL 10433429 (C.D. Cal. Dec. 29, 2015)....................................... 17

**California Cases**

*Kasky v. Nike, Inc.*
　　27 Cal. 4th 939 (2002)......................................................................... 19

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   *Pickering v. 24 Hour Fitness USA, Inc.*,
4      CGC-05-446492 (Cal. Super Ct. S. F. Cnty. June 8, 2009) ............3, 10, 14, 15, 20

5   **OTHER CASES**

6   *DeRiso v. Synergy USA*
7      6 A.D.3d 152 (1st Dept. 2004)........................................................................ 3, 12, 13, 14

8   *Melino v. Equinox Fitness Club*
9      6 A.D.3d 171 (1st Dep't 2004) ..................................................... 3, 11, 12, 14

10  *Sokoloff v. Town Sports Int'l, Inc.*
       6 A.D.3d 185 (1st Dep't 2004) ........................................................... 12, 16
11

12  **FEDERAL STATUTES**

13  Federal Rule of Civil Procedure 12(b)(1) ........................................................ 4, 6

14  Federal Rule of Civil Procedure 12(b)(6) ............................................................ 4

15  **CALIFORNIA STATUTES**

16  Cal. Bus. & Prof. Code § 17204 ....................................................................... 19

17  Cal. Civ. Code § 1812.80 .................................................................................. 10
18
    Cal. Civ. Code § 1812.82 ............................................................................... 8, 15
19
    Cal. Civ. Code § 1812.84(a) ............................................................................. 20
20

21  Cal. Civ. Code § 1812.84(b) ............................................................................. 15

22  Cal. Civ. Code § 1812.85(b)(1) ........................................................................ 14

23  Cal. Civ. Code § 1812.89(2) ............................................................................. 13

24  Cal. Civ. Code § 1812.93 .................................................................................... 9
25
    Cal. Civ. Code § 1812.94 ............................................................................. 10, 12
26

27  **OTHER STATUTES**

28  N.Y. Gen. Bus. Law § 628 ................................................................................ 12

1
2

# TABLE OF AUTHORITIES
### (continued)

3

**Page**

OTHER AUTHORITIES

Merriam-Webster Online Dictionary, http://www.merriam-webster.com
(Oct.13, 2016) .................................................................................................. 8

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION.**

SoulCycle Inc. ("SoulCycle" or the "Company") is a rapidly growing fitness company that primarily sells indoor group cycling classes ("Classes").  It is not a traditional gym offering memberships; rather, SoulCycle offers its customers the opportunity to buy one Class at a time, or a series of 5, 10, or more Classes without entering into any long-term membership contract.

Plaintiff Marko Cavka ("Cavka") chose to go onto SoulCycle's website and buy a single Class.  On its website, SoulCycle displays its Terms and Conditions ("Terms"), to which all customers, including Cavka, must agree prior to purchase, as well as Frequently Asked Questions ("FAQs") and other information, including information prominently disclosing the expiration date of Classes.  A customer can choose to print the Terms, the FAQs, or other web screen shots at any time, and Cavka did, in fact, print the Terms and attach them to his complaint ("Complaint").

Cavka does not allege that: (1) he was not provided with the written Terms prior to purchase, or that he was prevented from printing the Terms and FAQs or web screen shots off of his computer, or (2) he was unaware of the expiration date associated with his Class, or (3) he asked SoulCycle for a refund of his Class and was refused, or he attempted to use his Class, but was prevented from doing so, or that he asked SoulCycle to extend the Class' expiration date and was refused, or (4) that he signed a waiver, which SoulCycle then enforced against him, or (5) he became disabled and could not use his Class and that he then asked SoulCycle for a refund and was refused.

Nevertheless, Cavka attempts to mischaracterize SoulCycle's business model and transform his purchase of a Class into a putative nationwide class action lawsuit for purported technical violations of various provisions of the California Health Studio Services Contract Law ("HSSA") that do not apply to Cavka's experience as well as a violation of the "unlawful" prong of California's Unfair Competition Law ("UCL").  Specifically, Cavka attempts to capitalize on the

following technical provisions of the HSSA (which he assumes apply to SoulCycle), which he claims SoulCycle violated:  (1) SoulCycle allegedly did not provide him a copy of his contract; (2) the expiration date for his Class was allegedly not displayed in 14 point font; (3) he allegedly was not told of his right to cancel his class; (4) SoulCycle allegedly requires customers to sign a waiver (that he does not allege he signed), and (5) disabled customers (which Cavka does not allege he was) are supposedly not informed of their rights to obtain a refund. Cavka's allegations fail for two independent reasons.

First, Cavka has not sufficiently alleged that SoulCycle violated two of the HSSA provisions upon which he sues.  Specifically, SoulCycle complied with the HSSA by making available to Cavka a copy of the contract he entered into when he purchased his Class on the website.  The contract was clearly provided to him, and Cavka could have printed it had he chosen to do so.  As a result, his claim that he was not provided a copy of the contract fails. Similarly, Cavka's claim premised on SoulCycle's requirement that customers sign waivers of personal injury and property before participating in Classes fails for the simple reason that the HSSA does not prohibit such waivers.  As such, these allegations must be dismissed because SoulCycle complied with the HSSA.  (*See* Section IV).

Second, Cavka does not have standing to assert any of the alleged technical violations of the HSSA, and, as a result, the Court does not have subject matter jurisdiction.  California law and Article III do not permit Cavka to sue under the HSSA (and therefore, the UCL) without suffering an actual injury that is casually related to the purported violations of the HSSA.  Yet that is exactly what Cavka seeks to do here.  He does not allege that he was damaged by any of the purported technical violations: (1) there is no allegation that Cavka suffered any monetary harm resulting from his decision not to print the contract off the website at the time of his Class purchase; (2) there is no allegation that Cavka suffered monetary harm from viewing the clearly disclosed expiration date in whatever font he viewed it in,

-2-

(3) there is no allegation that Cavka tried to cancel his Class, much less that SoulCycle refused, (4) there is no allegation that Cavka signed a waiver, much less that he attended a Class, or was hurt, or that SoulCycle enforced such a waiver against him, or (5) that Cavka became disabled, much less that he asked SoulCycle to refund his money as a result and that SoulCycle refused.  Instead, Cavka's sole allegation of supposed monetary harm was that he paid $30 for a Class that he supposedly was unable to attend during the 30 days before it expired.  Such a contract, however:

> [i]s effectively an option to obtain . . . personal training sessions . . . .[Plaintiff's] decision not to use the sessions and thus not to exercise that option does not mean that she was harmed, it means she chose not to use the sessions. There is no evidence that [Plaintiff] did not obtain the benefit of her bargain – which was the option and ability to obtain . . . personal training sessions within a specified time period.

(Notice of Lodgment and Lodgment of Foreign Authorities in Support of Motion of Defendant SoulCycle Inc. to Dismiss Class Action Complaint, Ex. A, (Statement of Decision, *Pickering v. 24 Hour Fitness USA, Inc.*, CGC-05-446492 (Cal. Super Ct. S. F. Cnty. June 8, 2009) ("*Pickering* Statement of Decision") at 5.)[1]  Every court that has addressed this question in relation to health club laws has held that payment for a Class does not confer standing to sue for unrelated violations.  *Id.* at 6; *accord Wendt v. 24 Hour Fitness USA, Inc.*, 2015 WL 1344819, at *2 (N.D. Tex. Mar. 24, 2015); *Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 26

---

[1] While district courts in California "generally decline to consider an unpublished California decision when there is other published persuasive or binding authority on which to rely[,] . . . when there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, 2015 WL 4163008, at *12 n.24 (C.D. Cal. July 9, 2015) (citing *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)) (stating that the Court "may consider unpublished state decisions, even though such opinions have no precedential value" and that unpublished opinions may still "lend[] support" to a certain position regarding California law).  Because our research has not located any other authority deciding standing under the HSSA, it is proper for the Court to consider this unpublished decision in its analysis.

-3-

1   (D. Mass. 2006); *Melino v. Equinox Fitness Club*, 6 A.D.3d 171, 172 (1st Dep't

2   2004); *DeRiso v. Synergy USA*, 6 A.D.3d 152, 153 (1st Dept. 2004).  Therefore,

3   Cavka's purported technical violations are insufficient to create standing to sue

4   under the HSSA.  (*See* Section V.)

5       Because Cavka's UCL claim is predicated entirely on the HSSA claims for

6   which he lacks standing, Cavka's Complaint should be dismissed in its entirety

7   under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  (*See* Section VI.)

8   **II.    STATEMENT OF FACTS.**

9       **A.    SoulCycle's Pay As You Go Class Purchase Structure.**

10      SoulCycle offers Classes to its customers.  (Compl. ¶ 7).  To purchase a

11  Class, a customer must open an account.  To do so, customers click to affirmatively

12  signify their agreement to abide by SoulCycle's Terms.[2]  (Compl. ¶¶ 11-12, Ex. A

13  ("This policy governs your use of the SoulCycle website . . . and the SoulCycle

14  Mobile Application (the 'App'). . . . ACCEPTANCE OF TERMS  By using the

15  Website or App, you signify your acceptance of the Terms and Conditions.  If you

16  do not agree to this, please refrain from using the Website or App.").)

17      Unlike health studios where customers buy a membership usable for a

18  limited period of time, SoulCycle has a "pay-per-class model."  (Request for

19  Judicial Notice in Support of Motion of Defendant SoulCycle Inc. to Dismiss Class

20  Action Complaint ("RJN"), Ex 1, at 4.)  Customers can choose only to buy one

21  Class, or they can buy a series of 5, 10, 20, 30, or 50 Classes.  (RJN, Ex. 2).  The

22  cost of a Class depends on the type of Class purchased and how many are

23  purchased. (*See* Compl. ¶ 9; RJN, Ex. 2.)  Classes are available for purchase online

24  at soul-cycle.com, using the SoulCycle web application ("App"), or in a studio.

---

[2] As discussed more fully in SoulCycle's Request for Judicial Notice, filed with this motion, when considering this motion to dismiss, this Court may, pursuant to the Ninth Circuit's "incorporation by reference" rule, take judicial notice of and consider certain documents outside of the pleadings "without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

-4-

1   (RJN, Ex. 1, at 70.)  Many of SoulCycle's customers buy their Classes using the

2   website.  (*See id.* at F-8.)

3        When a customer would like to purchase a Class on the website, he is

4   brought to a screen which asks him to select the number of Classes he would like to

5   purchase (the "Selection Screen").  (RJN, Ex. 2; *see also* Compl. ¶ 10.)

6   Immediately above the "select" button for each option, which one must choose to

7   select the Class or Classes to buy, SoulCycle clearly informs the customer of the

8   expiration date for the Class(es) as well as the cost.  (RJN, Ex. 2.)  For example, a

9   single Class expires in 30 days.  (*Id.*; *see also* Compl. ¶ 9.)  As one might expect,

10  the more Classes a customer buys, the longer the customer has to use them.

11  (Compl. ¶ 9.)  The fact that Classes expire is also disclosed in the Terms to which

12  customers agree when opening their accounts, which provide:  "You should be

13  aware that classes and series expire . . . ."  (Compl. Ex. A at 5.)

14       At the bottom of the Selection Screen is a hyperlink to SoulCycle's FAQs,

15  which inform customers about SoulCycle's policies, including its cancellation

16  policy.  (RJN, Ex. 3 at "What is the cancellation policy for a Tiered Pricing

17  Program purchase?".)  The FAQ states that "a customer may cancel its Tiered

18  Pricing Program purchase up to five days after the purchase of the series with

19  written notice, unless otherwise provided by applicable law."  (*Id.*)

20       Once a customer selects the number of Classes to purchase, the customer is

21  brought to a screen for inputting payment method (the "Payment Screen").  (Compl.

22  ¶ 10.)  Immediately below the payment information is a box that the customer must

23  click that states that the customer "understand[s] and accept[s] the **terms and**

24  **conditions**."  (RJN, Ex. 4 (emphasis in original); *see also* Compl. ¶ 11.)  The

25  bolded phrase "terms and conditions" are a hyperlink that when clicked will bring

26  the customer to another page displaying the complete Terms.  (Compl. ¶ 11, Ex. A.)

27       Once a customer buys a Class, the customer is e-mailed a "Rider Receipt,"

28  which notifies the customer of the number of Classes purchased, amount paid, and

-5-

1  method of payment.  (Compl., Ex. B.)  A customer can then reserve a bike for a

2  Class (sometimes referred to as a "ride" or "rides") at a specific date and time

3  online, with the App, or directly with a SoulCycle studio.  (*See* RJN, Ex. 1 at 64,

4  70.)

5          **B.    The Plaintiff's Purchase of a Single Class.**

6          Cavka alleges that he bought one Class in July 2016 for $30 through the

7  SoulCycle website.  (Compl. ¶ 15.)  There are thirteen SoulCycle locations in

8  Southern California.  (RJN, Ex. 5.)  He claims he was "unable to reserve" a bike

9  before it expired 30 days later but does not explain why.  (Compl. ¶ 19.)  For

10  example, Cavka does not allege whether he was unable to use his Class because he

11  chose to let the Class expire or because of personal scheduling conflicts that

12  allegedly rendered him unable to take a 45 minute Class during a 30 day period.  He

13  further does not allege that he contacted SoulCycle to ask that the expiration date be

14  extended or to use his expired Class.

15  **III.   LEGAL STANDARD.**

16          Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to

17  dismiss a complaint for lack of subject matter jurisdiction.  When such a motion is

18  brought, "the plaintiff has the burden of proving that the court has subject matter

19  jurisdiction."  *Robbins v. Hyundai Motor Am.*, 2014 WL 4723505, at *2 (C.D. Cal.

20  Aug. 7, 2014) (Staton, J.) (internal citations omitted) (dismissing federal claim

21  where plaintiff lacked Article III standing and dismissing UCL claim for failure to

22  prove falsity and reliance).  For subject matter jurisdiction, the plaintiff must have

23  Article III standing, which "require[s] a plaintiff to establish (1) injury in fact, (2)

24  causation, and (3) redressability."  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504

25  U.S. 555, 560 (1992)).  "The injury in fact must be concrete and particularized and

26  actual or imminent; not conjectural or hypothetical."  *Id.* (quoting *Lujan*, 504 U.S.

27  at 560).  "Dismissal for lack of subject matter jurisdiction is appropriate if the

28  complaint, considered in its entirety, on its face fails to allege facts sufficient to

1  establish subject matter jurisdiction." *Marino v. Countrywide Fin. Corp.*, 26 F.

2  Supp. 3d 955, 960 (C.D. Cal. 2014) (Staton, J.) (dismissing declaratory/injunctive

3  relief claim and UCL claim seeking injunctive relief for lack of subject matter

4  jurisdiction) (quoting *In re Dynamic Random Access Memory (DRAM) Antitrust*

5  *Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008)).

6        When defendants file a motion under Federal Rule of Civil Procedure

7  12(b)(6), "[i]n order to survive dismissal for failure to state a claim, a complaint

8  must set forth 'more than labels and conclusions, and a formulaic recitation of the

9  elements of a cause of action will not do.'" *Forcellati v. Hyland's, Inc.*, 876

10  F. Supp. 2d 1155, 1158 (C.D. Cal. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550

11  U.S. 544, 555 (2007)).  "A complaint must (1) 'contain sufficient allegations of

12  underlying facts to give fair notice and to enable the opposing party to defend itself

13  effectively,' and (2) 'plausibly suggest an entitlement to relief, such that it is not

14  unfair to require the opposing party to be subjected to the expense of discovery and

15  continued litigation.'" *Do v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 5593935,

16  at *3 (C.D. Cal. Nov. 17, 2011) (Staton, J.) (dismissing UCL claim for lack of

17  standing, among other things) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

18  2011)).  Although the Court must accept factual allegations as true, "it 'is not bound

19  to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at *3

20  (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009)).  The Court also need

21  not accept assertions contradicted by judicially noticed facts.  *Gonzalez v. Planned*

22  *Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014).

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

## IV. <u>THE PLAINTIFF'S CLAIM ASSERTING CERTAIN VIOLATIONS OF THE HSSA MUST BE DISMISSED.</u>[3]

### A. **SoulCycle Complied with § 1812.82; It Gave Cavka the Contract.**

The HSSA requires that "[a] copy of the written contract shall be *given* to the customer at the time he signs the contract." Cal. Civ. Code § 1812.82 (emphasis added). To give means "to put into possession of another for his or her use." ("give," Merriam-Webster Online Dictionary, http://www.merriam-webster.com (Oct.13, 2016).)

SoulCycle "gave" Cavka a copy of the contract upon his purchase of the Class. When Cavka selected one class on the Selection Screen, he was informed that it would cost $30 and that it would expire in 30 days. (*See* Compl. ¶¶ 9, 15; *see also* RJN, Ex. 2.) At the bottom of this web page, SoulCycle provided a hyperlink to SoulCycle's "FAQ," which informed Cavka that "[a] customer may cancel its Tiered Pricing Program purchase up to five days after the purchase of the series with written notice, unless otherwise provided by applicable law." (RJN, Ex. 3 at "What is the cancellation policy for a Tiered Pricing Program purchase?".)

Cavka then would have had to view the Payment Screen; there, SoulCycle required him to click a box that stated that he "underst[ood] and accept[ed] the **terms and conditions**." (RJN, Ex.4 (emphasis in original); *see also* Compl. ¶ 10-11.) SoulCycle provided a full copy of the Terms via a hyperlink. (Compl. ¶ 11, Ex. A.) In addition, Cavka acknowledges that after completing his purchase,

---

[3] SoulCycle does not concede that the HSSA applies to SoulCycle's business model. The HSSA was designed to protect against "high pressure sales tactics," as a result of which one may feel "obligated to sign a contract immediately without adequate time" to consider the decision. *See, e.g.*, Cal. Bill Analysis, S.B. 581 Assem., Sept. 2, 2005 ("Consumers sometimes give into high pressure sales tactics"). That concern is inapplicable here, where the plaintiff bought his single Class on the website and there is no suggestion in the Complaint that he did so because SoulCycle forced him to do so using high pressure sales tactics.

Nevertheless, as Cavka: (a) has not demonstrated that SoulCycle violated certain provisions of the HSSA; and (b) does not have standing to assert a claim under the HSSA, SoulCycle is not now challenging the applicability of the HSSA. It does, however, expressly reserve all rights to do so, if needed, in the future.

1   SoulCycle e-mailed him a "Rider Receipt," which confirmed his purchase of one

2   Class for $30.  (Compl. ¶ 17.)

3          When filing his Complaint, Cavka was able to print out the Terms, the Rider

4   Receipt, and the waiver form;  he could have printed all of those documents – and

5   the FAQs and web screenshots – at the time of his purchase as well.  As a result,

6   SoulCycle gave (or put into Cavka's possession) the entire contract between the

7   Company and Cavka, which he was free to review, print, and save when and as he

8   saw fit.  Therefore, Cavka's assertion that SoulCycle violated the HSSA by failing

9   to give him a copy of the contract at the time of his purchase must be dismissed.

10         **B.     SoulCycle's New Rider Waiver Form Does Not Violate the HSSA.**

11         The plaintiff's allegation that SoulCycle violated the HSSA by requiring

12  customers to execute waivers (*see, e.g.*, Compl. ¶ 33(d)), must be dismissed

13  because the HSSA does not prohibit SoulCycle from seeking a waiver for personal

14  injuries, valuables, and personal property.  Quite the contrary, the HSSA only

15  prohibits a health studio from obtaining a waiver "of the provisions *of this title*,"

16  meaning the HSSA.  Cal. Civ. Code § 1812.93 (emphasis added).

17         Cavka misinterprets the New Rider Waiver Form.  The New Rider Waiver

18  Form does not require customers to waive the protections of the HSSA; it simply

19  requires customers to acknowledge that they have assumed the risk for participating

20  in the Class and release SoulCycle for personal injuries or property loss related to

21  participation in the Classes.  (*See* Compl., Ex. C.)  As such, the Court should

22  dismiss the allegation that SoulCycle's New Rider Waiver Form violates the HSSA.

23  **V.    CAVKA LACKS STANDING TO SUE FOR THE ALLEGED
        VIOLATIONS OF THE HSSA.**

24         The plaintiff's HSSA claim must also be dismissed because Cavka lacks

25  standing under California law and Article III to assert such a claim.

26         **A.     Cavka Does Not Have Standing to Sue Under California Law.**

27         Cavka lacks standing to bring his HSSA claim because he has not suffered an

28  injury that is causally related to SoulCycle's purported statutory violations.  The

-9-

1   California Legislature has declared that the purpose of the HSSA is "to safeguard

2   the public . . . by prohibiting or restricting . . . onerous contract terms . . . by which

3   the public *has been injured* in connection with contracts for health studio services."

4   Cal. Civ. Code § 1812.80 (emphasis added).  "[T]he intent of the HSSA is to

5   prevent *harm* to consumers who enter into health studio contracts."  (*Pickering*

6   Statement of Decision at 6.)  As such, the HSSA only permits a customer to bring

7   an action if he was "injured by a violation."  Cal. Civ. Code § 1812.94.  To

8   establish standing to bring a claim under the HSSA, a plaintiff must "demonstrate a

9   causal connection between [the defendant's] actions and her alleged injury."

10   (*Pickering* Statement of Decision at 5.)

11       In *Pickering*, the Court dismissed a putative class action brought for "alleged

12   technical violations of the HSSA" due to lack of standing "because [the plaintiff]

13   ha[d] not demonstrated that she was caused any injury as a result of any alleged

14   technical violations."  (*Id.* at 5-6.)  The plaintiff had entered into a contract for four

15   personal training sessions that expired after six months.  (*Id.* at 1-2.)  She "did not

16   attempt to use any of her training sessions" and did not receive a refund for the

17   money she paid for the sessions.  (*Id.* at 3.)  Pickering argued that the contract

18   violated the HSSA because the contract did not: (a) state the expiration date in 14

19   point or larger font; (b) include a provision that services would begin within six

20   months of the contract; and (c) state the entity to whom the cancellation notice

21   should be sent.  (*Id.* at 4.)  The Court dismissed the complaint because "[t]he

22   evidence . . . demonstrate[d] that even if technical provisions were not strictly

23   complied with . . . there was no harm caused to Pickering as a result of the alleged

24   deficiencies."  (*Id.* at 6.)

25       This decision, and the HSSA's standing requirement, is consistent with

26   numerous decisions in other jurisdictions that have repeatedly held that "a plaintiff

27   lacks standing to sue under the state's version of a health club act when the plaintiff

28   cannot allege injury, even if the contract violates the act."  *Wendt*, 2015 WL

1344819, at *2 (dismissing claim for lack of standing under the Texas Health Spa
Act ("THSA")); *see also Melino*, 6 A.D.3d at 172 (upholding grant of motion to
dismiss due to lack of standing under the NY Health Club Services Law
("NYHCSL") because plaintiff did not allege "that she . . . sustained loss or damage
because of the alleged discrepancies between the contract and the [NYHCSL]");
*Ruiz*, 447 F. Supp. 2d at 26 (plaintiff's claim for violation of the Massachusetts
Health Club Act ("MHCA") failed due to lack of standing).

Here, Cavka has alleged five purported violations of the HSSA, every time
asserting that he was injured as a result because he paid $30 for a Class that he
supposedly was unable to use during the thirty days before it expired.  (Compl.
¶ 19.)  Each purported violation fails for lack of standing as demonstrated below.

### 1.   Cavka Did Not Execute the New Rider Waiver Form, Did Not Attend a Class, Was Not Hurt, and Was Not Thwarted in An Attempt to Hold SoulCycle Liable.

As explained above, the New Rider Waiver Form does not violate the HSSA.
Even if it did (which it does not), Cavka lacks standing to assert that SoulCycle
violated the HSSA by requiring customers to execute the New Rider Waiver Form
before participating in a Class because:

- He has not alleged that he signed the waiver; indeed, the New Rider Waiver Form he chose to attach to his Complaint is unsigned (Compl. Ex. C),

- He has not alleged that he attended a Class; indeed, he alleges he was "unable" to do so,

- He has not alleged he was hurt at the Class that he did not attend,

- He has not alleged that he attempted to hold SoulCycle liable as a result of his non-existent injury at the Class he did not attend, and

- He has not alleged that SoulCycle enforced the waiver he never signed in connection with a Class he did not attend and at which he was not hurt.

This situation is analogous to *Melino*, where the plaintiff alleged a violation

-11-

1  of the NYHCSL[4] because the contract "purport[ed] to exempt defendant from

2  liability for its own negligence."  6 A.D.3d at 172.  The Court granted the

3  defendant's motion to dismiss because the "Plaintiff d[id] not allege that she ever

4  attempted to . . . hold defendant liable for negligence, but was prevented from doing

5  so because of the contract."  *Id.*; *see also Ruiz*, 447 F. Supp. 2d at 26 (plaintiff

6  asserted that Bally's "provision limiting the liability of the health club 'for the loss

7  or theft of, or damage to, the personal property of members or guests'" violated the

8  MCHA; the Court disagreed and held that "the failure of [plaintiff] to allege any

9  injury caused thereby deprive[d] her of standing to seek a remedy for the alleged

10  violation.").

11      So too here.  Here, Cavka has not alleged that he was prevented from seeking

12  redress against SoulCycle due to the waiver (nor could he since he never executed

13  such a waiver, attended a Class, or got hurt).  Instead, the sole allegation of "injury"

14  is that Cavka paid $30 for a Class that he supposedly was "unable" to attend during

15  its 30 day expiration period (which does not allege a HSSA violation).  (Compl.

16  ¶ 19.)  These allegations are not sufficient to confer standing to sue for an unrelated

17  violation.  *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185, 186 (1st Dep't 2004).

18  For example, in *Sokoloff*, the plaintiff asserted that her contract violated the

19  NYHCSL because it "limit[ed] defendant's liability for personal injury or property

20  loss" and the alleged injury was her payment of her membership fees.  6 A.D.3d at

21  186.  The Court rejected the plaintiff's argument and affirmed dismissal of the

22  complaint for lack of standing, holding that "[s]uch claim impermissibly 'sets forth

23  deception as both act and injury.'"  *Id.* (internal citation omitted); *see also DeRiso*,

24

[4] The HSSA and the NYHSCL have almost identical damages provisions.
25  *Compare* Cal. Civ. Code § 1812.94 ("Any buyer injured by a violation of this title may bring an action for the recovery of damages.  Judgment may be entered for
26  three times the amount at which the actual damages are assessed plus reasonable attorney fees.") *with* N.Y. Gen. Bus. Law § 628 ("Any buyer damaged by a
27  violation of this article may bring an action for recovery of damages.  Judgment may be entered in an amount not to exceed three times the actual damages plus
28  reasonable attorney fees.").

-12-
MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
8:16-CV-01821 JLS (KESx)

1  6 A.D.3d at 153 (affirming dismissal of complaint seeking return of membership

2  fees already paid because "[s]uch a claim impermissibly 'sets forth deception as

3  both act and injury'").

4      Cavka has not been injured by the New Rider Waiver Form and does not

5  have standing to assert this purported technical violation of the HSSA.

6  **2. Cavka Has Not Alleged That He Was Disabled, That He Sought to Cancel His Class, or That SoulCycle Refused.**

7      Cavka similarly does not have standing to assert that SoulCycle violated the

8  HSSA by failing to include a provision in its contract explaining its refund policy

9  for individuals with a disability.  Cal. Civ. Code §1812.89(2).

10      In *Wendt*, for example, a plaintiff asserted a violation of the THSA because

11  the contract failed to include required language regarding the refund policy upon

12  disability.  2015 WL 1344819 at *5.  The plaintiff, however, "did not die or become

13  disabled during his membership so he did not seek a refund based on death or

14  disability."  *Id.* at *6.  Given these facts, the Court held that:

15      [t]here [wa]s no evidence that Plaintiffs did not obtain the benefit of their contract … Regardless of alleged

16  deficiencies in the contractual language, Plaintiffs received what they bargained for: use of a health club

17  facility.  Plaintiffs do not assert facts showing injury other than the money paid to 24 Hour in order to access a gym.

18  Plaintiff's money paid under the contracts *does not constitute injury because they received exactly what they*

19  *bargained for*.

20  *Id.* (emphasis added); *see also DeRiso*, 6 A.D.3d at 153 (rejecting NYHCSL claim

21  based on failure to include language that the contract could be cancelled due to

22  disability for lack of standing).

23      The same result follows here.  Cavka does not allege that:

24      • Following his Class purchase, he became disabled;

25      • As a result, he sought a refund from SoulCycle; and

26      • SoulCycle refused him the refund he never sought.

27  Without such allegations, Cavka does not have standing to sue for a purported

28  technical violation of the HSSA's requirement to include the refund policy for

-13-

1   disabilities in health studio contracts.  And his payment for the Class cannot give

2   him standing because he received what he paid for, the ability to attend a Class.

3          **3.      Cavka Has Not Alleged That He Sought to Cancel His Class
                     and SoulCycle Refused.**

4

5          Cavka similarly does not have standing to assert that SoulCycle violated the

6   HSSA by failing to include certain language notifying him of his cancellation right

7   near his signature line.  Cal. Civ. Code §1812.85(b)(1).

8          As an initial matter, SoulCycle informs its customers of their right to cancel

9   their Class within five days in its FAQ.  (RJN, Ex. 3  at "What is the cancellation

10  policy for a Tiered Pricing Program purchase?" ("[A] customer may cancel its

11  Tiered Pricing Program purchase up to five days after the purchase of the series

12  with written notice, unless otherwise provided by applicable law.").)

13         Regardless, this situation is indistinguishable from *Pickering*, where the

14  plaintiff alleged a violation of the HSSA because her contract did not include all of

15  the refund language required by §1812.85.  (*Pickering* Statement of Decision at  4.)

16  The Court held that the plaintiff did not have standing to assert such a claim

17  because "she did not attempt to cancel her contract within the 3-day period," and

18  therefore "was not caused harm by the alleged defect."  (*Id.* at 6.); *see also Melino*,

19  6 A.D.3d at 172 (upholding grant of a motion to dismiss for an alleged violation of

20  the NYHCSL due to an alleged failure to properly disclose the customer's

21  cancellation rights because plaintiff "d[id] not allege that she ever attempted to

22  cancel the contract"); *DeRiso*, 6 A.D.3d at 153 (rejecting NYHCSL claim based on

23  failure to include cancellation language due to lack of standing).

24         Similarly, here, Cavka has not alleged that he attempted to cancel the Class

25  within the required time period or that SoulCycle refused his request.  Without

26  these allegations, he does not have standing to sue for the purported technical

27  violation of the HSSA.

28  /////

1
2

**4.      Cavka Has Not Alleged That He Was Injured Due to SoulCycle's Purportedly Improper Font Size For Displaying His Contract Length.**

3      Finally, Cavka does not have standing to allege that his contract did not have

4  a statement in "at least 14-point type that disclose[d] the length of the term of the

5  contract . . . above the space reserved for the signature."  Cal. Civ. Code

6  § 1812.84(b).  As Cavka acknowledges, SoulCycle informed him of the length of

7  the contract on the Selection Screen.  (*See* Compl. ¶ 9.)  For his purchase of one

8  Class, his contract expired in thirty days and that statement "Expires in 30 days"

9  was prominently disclosed immediately above the select button.[5]  (RJN, Ex. 2.)

10      This situation is once again indistinguishable from *Pickering*, where the

11  plaintiff unsuccessfully attempted to assert a violation of the HSSA due to the

12  alleged improper font size.  (*Pickering* Statement of Decision at 4.)  The Court

13  rejected the claim because "even if the type size was not correct, no harm was

14  caused to Pickering as a result of the purported type size defect."  (*Id.* at 6.)  So too

15  here.  Cavka has not alleged any injury related to the allegedly improper font size

16  and his payment for the Class is insufficient to confer standing as a matter of law.

17

**5.      Cavka Has Not Alleged That He Was Injured Due to SoulCycle's Purported Failure to Give Him His Contract.**

18      Finally, Cavka does not have standing to allege that SoulCycle failed to give

19  him his contract upon purchasing his Class as required by Cal. Civ. Code

20  § 1812.82.  As with the other purported HSSA violations, Cavka's payment for the

21  Class is insufficient to confer standing and he has not alleged any injury related to

22  his alleged failure to receive a copy of his contract (which is not surprising since

23  SoulCycle actually gave him with a copy of the contract).  (*See, e.g. id.* at 6.)

24  /////

25

26  _____
[5] A court has already held that SoulCycle did not "misrepresent[] the existence or duration of the expiration date" of Classes.  *Cody v. SoulCycle, Inc.*, 2016 WL

27  4771392, *10 (C.D. Cal. January 11, 2016).  Quite the contrary, the "expiration dates of class purchases are conspicuously listed above the 'select' button that a

28  user must click to purchase the class."  (*Id.*)

-15-

1    In summary, Cavka's HSSA claims must be dismissed because he cannot

2    allege an injury that is caused by any of the purported technical violations of the

3    HSSA.  Quite the contrary, his only purported "injury" is that he paid for a Class he

4    did not use before it expired.  Such a "loss" has already been held insufficient to

5    confer standing.  (*See, e.g.*, *id.* ("[E]ven if technical provisions were not strictly

6    complied with . . . there was no harm."); *Sokoloff*, 6 A.D.3d at 186 ("Such claim

7    impermissibly 'sets forth deception as both act and injury.'").)

8    ### B.    Cavka Does Not Have Article III Standing.

9    Cavka's claims under the HSSA must also be dismissed because he lacks

10   standing under federal law.  To have standing under Article III, "the plaintiff must

11   have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

12   conduct of the defendant, and (3) that is likely to be redressed by a favorable

13   judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "To

14   establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of

15   a legally protected interest' that is 'concrete and particularized' and 'actual or

16   imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (internal citations omitted).

17   "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and

18   individual way.'"  *Id.*  "Therefore, a plaintiff does not 'automatically satisfy the

19   injury-in-fact requirement whenever a statute grants a person a statutory right and

20   purports to authorize that person to sue to vindicate that right.'"  *Ewing v. SQM US,*

21   *Inc.*, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016).  Moreover, an injury is

22   only fairly traceable to the conduct of the defendant if the complaint "assert[s]

23   conduct by Defendants which directly or indirectly led to the alleged harm."  *In re*

24   *iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055-56 (N.D. Cal. 2012).

25   ### 1.    Cavka's Alleged Injury is Not "Fairly Traceable" to SoulCycle's Purported HSSA Violations.

26

27   Since Cavka cannot meet the standing requirements under California law, he

28   equally cannot meet the standing requirements under federal law, which also

-16-

1   require a connection between the purported injury and the defendant's conduct.

2   Specifically, Cavka has not alleged an injury that is "fairly traceable" to

3   SoulCycle's purported violations of the HSSA.  Instead, he has only argued that he

4   spent $30 for a Class he did not attend before it expired.  (*See* Compl. ¶ 19.)

5          For example, in *In re Google, Inc. Privacy Policy Litig.*, a plaintiff asserted

6   breach of contract and fraudulent unfair competition claims against Google for

7   improper disclosure of personal information to third-party developers.  2015 WL

8   4317479, at *1 (N.D. Cal. July 15, 2015).  The Court dismissed the complaint

9   because the plaintiff's asserted injury of "battery and bandwidth depletion" due to

10  transmission of improper personal information was "not 'fairly traceable' to the

11  challenged action," because the transmissions alleged did not "contain *any* personal

12  information."  *Id.*, at *6; *see also Yagman v. Bray*, 2015 WL 10433429, at *4 (C.D.

13  Cal. Dec. 29, 2015) (rejecting standing because "plaintiff's continuing obligation to

14  make monthly mortgage payments [wa]s not an injury in fact that [wa]s 'fairly

15  traceable' to defendants' conduct since" "[t]he allegedly deficient assignments and

16  faulty securitization of his loan did not change his obligation"); *Ewing*, 2016 WL

17  5846494, at *2 (rejecting standing because the complaint "d[id] not, and [could]

18  not, connect" the alleged injury to the defendants' alleged use of an autodialer

19  because that conduct did not cause him "to incur a charge that he would not have

20  incurred had Defendants manually dialed his number," which was not a violation).

21              **2.    Cavka Has Alleged Only a Bare Procedural Violation,**
                        **Which Does not Confer Standing.**
22

23         Since Cavka's payment for the Class does not confer standing here, he solely

24  alleges bare statutory violations of the HSSA.  The Supreme Court made clear in

25  *Spokeo* that "a bare procedural violation, divorced from any concrete harm,

26  [cannot] satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at

27  1549; *see also Jamison v. Bank of Am. N.A.*, 2016 WL 3653456, at *4 (E.D. Cal.

28  July 7, 2016); *Nokchan v. Lyft, Inc.*, 2016 WL 5815287, at *4 (N.D. Cal. Oct. 5,

-17-

1  2016).  For example, in *Jamison*, the plaintiff alleged that the defendant failed to

2  account for insurance payments in payoff statements in violation of the Truth in

3  Lending Act.  2016 WL 3653456, at *4.  The plaintiff further alleged that class

4  members would suffer "drastic consequences" if a payoff statement did not provide

5  an accurate view of their outstanding balance when they sought refinancing or were

6  facing foreclosure.  *Id.*  The Court held that the plaintiff had not asserted standing

7  because she failed to allege that "those circumstances ever arose"; for example, she

8  never alleged that she was injured after seeking refinancing.  *Id.*

9      Similarly, the Court in *Nokchan* dismissed the plaintiff's complaint where the

10  plaintiff alleged "that he did not receive required disclosures in a separate document

11  or that he did not receive a summary of his rights under the" Fair Credit Reporting

12  Act ("FCRA").  2016 WL 5815287, at *4.  Instead, he "allege[d] only that

13  Defendant did not comply with the procedural requirements" of the FCRA.  *Id.* at

14  *5.  The Court dismissed the complaint because the plaintiff did not allege that he

15  "was confused about his rights or that he would not have consented to the

16  background checks had he understood his rights."  *Id.*   As such, the Court

17  concluded that "no real harm" existed.  *Id.* at *4.  In explaining its ruling, the Court

18  explicitly rejected the pre-*Spokeo* decisions that had held that a plaintiff could

19  suffer an "informational injury" when a defendant "fail[ed] to provide disclosures

20  that [we]re required under the FCRA."  *Id.* at *9.

21      The same result is compelled here.  Cavka has failed to connect the purported

22  technical violations of the HSSA to any concrete harm that he allegedly suffered.

23  Quite the contrary, he is attempting to assert that the purported statutory violations

24  *are* themselves the injury.  This is insufficient to confer standing under Article III.

25      Cavka does not have Article III standing and his HSSA claim must be

26  dismissed.

27  /////

28  /////

-18-

1    VI.   **THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE UCL.**

2          A.   **Cavka's UCL Claim Must Be Dismissed Because it Is Solely Predicated on Violations of the HSSA, Which Fail.**

3          To state a claim under the "unlawful" prong of the UCL, a plaintiff must

4    allege a violation of some other law. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950

5    (2002). Here, Cavka predicates his claim that SoulCycle acted "unlawful[ly]" upon

6    alleged violations of the HSSA. (Compl. ¶ 41.) Cavka's HSSA claims, however,

7    must be dismissed for lack of standing (*see* Section V(A)). As a result, any claim

8    of "unlawful" conduct based on the supposed violation of those laws necessarily

9    fails as well. *See, e.g.*, *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1137 (C.D.

10   Cal. 2011) (Staton, J.) ("Plaintiffs' UCL claim 'stands or falls depending on the fate

11   of the antecedent substantive causes of action.'").

12         B.   **In Any Event, Cavka Has Not Alleged Standing Under the UCL.**

13         Even if Cavka stated a UCL claim (which he has not), to have standing a

14   class action plaintiff must have "suffered injury in fact and . . . lost money or

15   property as a result of such unfair competition." Cal. Bus. & Prof. Code

16   § 17204. "Moreover, a plaintiff must demonstrate that his economic injury came

17   'as a result of the unfair competition.'" *Ballard v. Bank of Am., N.A.*, 2014 WL

18   503143, at *2 (C.D. Cal. Jan. 28, 2014) (Staton, J.) (quoting *Kwikset Corp. v.*

19   *Super. Ct.* , 51 Cal. 4th 310, 323 (2011)). "When a UCL action is based on an

20   unlawful business practice . . . there must be a causal connection between the harm

21   suffered and the unlawful business activity." *Thieme v. Cobb*, 2016 WL 3648531,

22   at *6 (N.D. Cal. July 8, 2016) (quoting *Daro v. Super. Ct.*, 151 Cal App. 4th 1079,

23   1099 (2007)); *see also Do*, 2011 WL 5593935, at *5 (plaintiff must "prove that the

24   alleged unfair business practice caused the plaintiff harm"; dismissing with

25   prejudice UCL claim for lack of standing). The necessary "causal connection is

26   broken when a complaining party would suffer the same harm whether or not a

27   defendant complied with the law." *Thieme*, 2016 WL 3648531, at *6.

28   /////

1    Cavka cannot meet the standing requirements to assert a UCL claim here

2    because his alleged economic injury – that he lost the amount he paid for his Class

3    because he did not use it before it expired (Compl. ¶ 19) – has no causal

4    relationship whatsoever to the purported technical violations of the HSSA (as

5    detailed above in Section V(A)).[6]  (*Cf.* Civil Minutes – General at 16-17, *Kissel v.*

6    *Code 42 Software, Inc.*, 8:15-CV-01936  (C.D. Cal. Apr. 14, 2016) (Staton, J.)

7    (finding standing under the UCL's unlawful prong where the alleged violations

8    were the requirements to impose automatic renewal terms because the injury was

9    the charge imposed through automatic renewal).)

10    For example, Cavka asserts that SoulCycle violated the HSSA because his

11    contract did not detail the refund policy for disabled individuals (Compl. ¶ 13(e)),

12    yet he has not alleged that he is disabled, that this disability prevented him from

13    taking his Class, or that he sought a refund due to a disability, and that he was

14    refused.  Ultimately, Cavka seeks to have his $30 Class payment act as injury, even

15    though he would have paid that sum of money regardless of whether SoulCycle had

16    complied with the purportedly violated sections of the HSSA.  In such a situation,

17    Cavka does not have standing to assert his UCL claim here and the claim must be

18    dismissed.  *See, e.g.*, *Ballard*, 2014 WL 503143, at *2.

19    **VII.   CAVKA DOES NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF UNDER THE UCL.**

20    "Plaintiffs must show standing with respect to each form of relief sought."

21    *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).  "'To seek

22    injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in

23    _____

24    [6] It should be noted that, to the extent that Cavka is attempting to state a claim based on the expiration date of his Class, it would fail because expiration dates are required under the HSSA.  Cal. Civ. Code § 1812.84(a) (stating that contracts for

25    health studios may not "exceed three years"); *see also Pickering* Statement of Decision at 7 ("[T]he insertion of an expiration provision is not only *not* unfair or

26    unconscionable; it is mandated by law.").  Moreover, to the extent that such a claim could stand, it would be subsumed within the putative class in another pending

27    action, *Cody v. SoulCycle, Inc.* 2:15-cv-06457.  In that case, the putative class purports to assert claims relating to SoulCycle's expiration dates under the

28    Electronic Funds Transfer Act and the UCL.

-20-

1   fact' that is concrete and particularized; the threat must be actual and imminent, not

2   conjectural or hypothetical; it must be fairly traceable to the challenged action of

3   the defendant; and it must be likely that a favorable judicial decision will prevent or

4   redress the injury." *Tigbao v. QBE Fin. Inst. Risk Servs., Inc.*, 2014 WL 5033236,

5   at *2 (C.D. Cal. 2014) (Staton, J.) (quoting *Summers v. Earth Island Inst.*, 555 U.S.

6   488, 493 (2009)).

7         For example, in *Delarosa v. Boiron, Inc.*, the plaintiff sought injunctive relief

8   for a UCL false advertising claim.  2012 WL 8716658, at *4 (C.D. Cal. Dec. 28,

9   2012) (Staton, J.).  This Court held that the plaintiff did not have standing to seek

10  injunctive relief; because the plaintiff did "not intend to purchase [the product]

11  again, there [wa]s not a 'sufficient likelihood that she w[ould] again be wronged in

12  a similar way.'"  *Id.*; *see also Wang v. OCZ Tech. Grp. Inc.*, 276 F.R.D. 618, 626

13  (N.D. Cal. 2011) (rejecting standing to seek injunctive relief for UCL claim because

14  plaintiff could not demonstrate future injury even though defendant "maintain[ed]

15  the same marketing materials and website pages and thereby continue[d] to violate

16  the false advertising laws").

17        The same result follows here.  Cavka alleges that he purchased a single Class

18  for $30.  (Compl. ¶ 15.)  He has not alleged that he intends to purchase another

19  Class in the future.  As such, he does not have standing to assert injunctive relief

20  because "any loss of value" he experienced "has already occurred."  *Wang*, 276

21  F.R.D. at 626; *see also Tigbao*, 2014 WL 5033236, at *3 (rejecting the plaintiff's

22  request for injunctive relief because she failed to "demonstrate the existence of an

23  imminent threat" that defendant would repeat the conduct against her).

24  **VIII.  <u>CONCLUSION.</u>**

25        The plaintiff catalogues various ways in which he claims that SoulCycle

26  violated technical violations of the HSSA (and through them, the UCL), but

27  (1) some of those allegations fail to state a claim under the statute, and (2) his

28  Complaint makes plain that the alleged violations (to the extent they even constitute

-21-

1  violations) are either inapplicable to Cavka entirely or caused him no harm.  The

2  plaintiff's purchase of a single Class, which he obliquely alleges he was "unable" to

3  take, does not confer standing to sue under the HSSA, UCL or Article III since his

4  alleged economic inquiry has no causal relationship to the purported technical

5  violations of the HSSA.  As such, his Complaint should be dismissed in its entirety.

6

7                                    Respectfully submitted,

8

9                                    DLA PIPER LLP (US)

10  Dated:  October 21, 2016        By: */s/Shirli F. Weiss*
                                        SHIRLI F. WEISS
11                                      KEARA M. GORDON
                                        COLLEEN CAREY GULLIVER
12                                      KATHERINE J. PAGE

13                                      Attorneys for Defendant
                                        SOULCYCLE INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-