1    SHIRLI F. WEISS (Bar No. 79225)
    shirli.weiss@dlapiper.com
2    KATHERINE J. PAGE (Bar No. 259556)
    katherine.page@dlapiper.com
3    **DLA PIPER LLP (US)**
    550 South Hope Street, Suite 2300
4    Los Angeles, CA 90071-2678
    Tel: 213.330.7700
5    Fax: 213.330.7701

6    KEARA M. GORDON (*pro hac vice*)
    keara.gordon@dlapiper.com
7    COLLEEN CAREY GULLIVER (*pro hac vice*)
    colleen.gulliver@dlapiper.com
8    **DLA PIPER LLP (US)**
    1251 Avenue of the Americas, 27th Floor
9    New York, NY 10020-1104
    Tel: 212.335.4500
10   Fax: 212.335.4501

11   Attorneys for Defendant
    SOULCYCLE INC.

12

13            **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15              **SOUTHERN DIVISION**

16

17   MARKO CAVKA, individually and    CASE NO. 8:16-CV-01821 JLS (KESx)
    on behalf of all others similarly
18   situated,                     **MEMORANDUM OF POINTS AND**
                           **AUTHORITIES IN SUPPORT OF**
19            Plaintiffs,          **MOTION OF DEFENDANT**
                           **SOULCYCLE INC. TO DISMISS**
20       v.                        **FIRST AMENDED CLASS ACTION**
                           **COMPLAINT**
21   SOULCYCLE, INC., a Delaware
    corporation,                    Fed. R. Civ. Proc. 12(b)(1) and (b)(6)
22            Defendants.     Date:       January 27, 2017
                           Time:      2:30 p.m.
23                            Judge:     Hon. Josephine L. Staton
                           Ctrm:      10A
24

25

26

27

28

# TABLE OF CONTENTS

                                                                          **Page**

I.    INTRODUCTION. ...................................................................................1

II.   STATEMENT OF FACTS. ......................................................................4

      A.    SoulCycle's Pay-Per -Class Purchase Structure................................4

      B.    The Plaintiff's Purchase of a Single Class. ....................................6

III.  LEGAL STANDARD................................................................................6

IV.   THE PLAINTIFF'S CLAIM ASSERTING CERTAIN VIOLATIONS
      OF THE HSSA MUST BE DISMISSED.....................................................7

      A.    SoulCycle Complied with § 1812.82. ..............................................7

            1.    SoulCycle Gave Cavka the Contract........................................8

            2.    The HSSCL Does Not Require SoulCycle to Provide a
                  Statutorily-Compliant Contract.............................................9

      B.    SoulCycle's New Rider Waiver Form Does Not Violate the
            HSSCL. ....................................................................................10

V.    CAVKA LACKS STANDING TO SUE FOR THE ALLEGED
      VIOLATIONS OF THE HSSCL...............................................................11

      A.    Cavka Does Not Have Standing to Sue Under California Law. .........11

            1.    Cavka's Allegation that He Paid for An Allegedly Void
                  Contract Does Not Confer Standing. ....................................12

            2.    Cavka Did Not Execute the New Rider Waiver Form, Did
                  Not Attend a Class, Was Not Hurt, and Was Not
                  Thwarted in An Attempt to Hold SoulCycle Liable. ...............14

            3.    Cavka Has Not Alleged That He Was Disabled, That He
                  Sought to Cancel His Class, or That SoulCycle Refused. ........16

            4.    Cavka Has Not Alleged That He Sought to Cancel His
                  Class and That SoulCycle Refused. ......................................17

            5.    Cavka Has Not Alleged That He Was Injured Due to
                  SoulCycle's Purportedly Improper Font Size For
                  Displaying His Contract Length. ..........................................17

            6.    Cavka Has Not Alleged That He Was Injured Due to
                  SoulCycle's Purported Failure to Give Him His Contract. ......18

      B.    Cavka Does Not Have Article III Standing........................................19

            1.    Cavka's Has Not Suffered an Injury in Fact............................19

            2.    Cavka's Alleged Injury is Not "Fairly Traceable" to
                  SoulCycle's Purported HSSA Violations. ..............................20

# **TABLE OF CONTENTS**
## **(continued)**

                                                                              **Page**

        3.    Cavka Has Alleged Only a Bare Procedural Violation, Which Does Not Confer Standing. ............................................20

VI.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE UCL............................................................................................22

    A.    Cavka's UCL Claim Must Be Dismissed Because it Is Solely Predicated on Violations of the HSSCL, Which Fail..........................22

    B.    In Any Event, Cavka Has Not Alleged Standing Under the UCL......23

VII.    CAVKA LACKS STANDING TO SEEK INJUNCTIVE RELIEF UNDER THE UCL. ..................................................................24

VIII.    CONCLUSION....................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Adelman v. Spark Networks, Ltd.*,
 2008 WL 2108667 (Cal. Ct. App. 2d May 20, 2008)..............................4, 13, 14

*Alonzo v. Maximus, Inc.*,
 832 F. Supp. 2d 1122 (C.D. Cal. 2011) (Staton, J.).............................................23

*Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*,
 2015 WL 4163008 (C.D. Cal. July 9, 2015)........................................................3

*Ballard v. Bank of Am., N.A.*,
 2014 WL 503143 (C.D. Cal. Jan. 28, 2014) (Staton, J.).............................. 23, 24

*Case v. Hertz Corp.*,
 2016 WL 6835086 (N.D. Cal. Nov. 21, 2016) ....................................................22

*Cheren v. Compass Bank*,
 2012 WL 5381445 (D. Ariz. Nov. 2, 2012)..........................................................9

*Daro v. Super. Ct.*,
 151 Cal App. 4th 1079 (2007) ............................................................................23

*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ..............................................................................4

*Delarosa v. Boiron, Inc.*,
 2012 WL 8716658 (C.D. Cal. Dec. 28, 2012).....................................................25

*DeRiso v. Synergy USA*,
 6 A.D.3d 152 (N.Y. App. Div. 1st Dep't 2004) ................................. 4, 15, 16, 17

*Do v. Am. Home Mortg. Servicing, Inc.*,
 2011 WL 5593935 (C.D. Cal. Nov. 17, 2011) (Staton, J.)..............................7, 23

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) ..............................................................................24

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*,
 330 F.3d 1214 (9th Cir. 2003) ..............................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ..................................................7

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014) .............................................................7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008) ...............................................................7

*In re Google, Inc. Privacy Policy Litig.*,
   2015 WL 4317479 (N.D. Cal. July 15, 2015) ...................................20

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)..............................................19

*Jamison v. Bank of Am. N.A.*,
   2016 WL 3653456 (E.D. Cal. July 7, 2016)................................. 20, 21

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ........................................................................22

*Kaufman v. City of San Francisco*,
   434 F. App'x 583 (9th Cir. 2011) .................................................. 21, 22

*Kim Laube & Co. v. Wahl Clipper Corp.*,
   2013 WL 12084741 (C.D. Cal. Mar. 8, 2013)....................................10

*Kissel v. Code 42 Software, Inc.*,
   8:15-CV-01936 (C.D. Cal. Apr. 14, 2016) (Staton, J.)......................24

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................23

*Lee v. Hertz Corp.*,
   2016 WL 7034060 (N.D. Cal. Dec. 2, 2016).......................................22

*Lujan v. Defendants of Wildlife*,
   504 U.S. 555 (1992).............................................................................19

*Marino v. Countrywide Fin. Corp.*,
   26 F. Supp. 3d 955 (C.D. Cal. 2014) (Staton, J.)..................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Melino v. Equinox Fitness Club,*
    6 A.D.3d 171 (N.Y. App. Div. 1st Dep't 2004) ................................ 4, 12, 15, 17

*Neal v. Bank of Am.,*
    2012 WL 3638762 (D. Ariz. Aug. 24, 2012).......................................................10

*Nokchan v. Lyft, Inc.,*
    2016 WL 5815287 (N.D. Cal. Oct. 5, 2016) .............................................. 21, 22

*Pickering v. 24 Hour Fitness USA, Inc.,*
    CGC-05-446492 (Cal. Super Ct. S. F. Cnty. June 8, 2009) ...................... passim

*Robbins v. Hyundai Motor Am.,*
    2014 WL 4723505 (C.D. Cal. Aug. 7, 2014) (Staton, J.).....................................6

*Ruiz v. Bally Total Fitness Holding Corp.,*
    447 F. Supp. 2d 23 (D. Mass. 2006).......................................................... 3, 12, 15

*Sokoloff v. Town Sports Int'l, Inc.,*
    6 A.D.3d 185 (N.Y. App. Div. 1st Dep't 2004) ......................................... 15, 18

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016)..................................................................... 19, 20, 21

*Stelmachers v. Verifone Sys., Inc.,*
    2016 WL 6835084 (N.D. Cal. Nov. 21, 2016) .................................................21

*Taisacan v. Camacho,*
    660 F.2d 411 (9th Cir. 1981).....................................................................19

*Thieme v. Cobb,*
    2016 WL 3648531 (N.D. Cal. July 8, 2016)......................................................23

*Tigbao v. QBE Fin. Inst. Risk Servs., Inc.,*
    2014 WL 5033236 (C.D. Cal. 2014) (Staton, J.)...............................................25

*U.S. v. Mednansky,*
    2011 WL 844956 (S.D. Cal. Mar. 8, 2011) ........................................................8

*Wang v. OCZ Tech. Grp. Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011).....................................................................25

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wendt v. 24 Hour Fitness USA, Inc.,*
   2015 WL 1344819 (N.D. Tex. Mar. 24, 2015), *aff'd* 821 F.3d 547 (5th Cir. 2016) ........................................................................................ passim

*Wendt v. 24 Hour Fitness USA, Inc.,*
   821 F.3d 547 (5th Cir. 2016) ....................................................................13

*Yagman v. Bray,*
   2015 WL 10433429 (C.D. Cal. Dec. 29, 2015)........................................20

**STATUTES**

Cal. Bus. & Prof. Code § 17204 .....................................................................23

Cal. Civ. Code § 1694.4 ..................................................................................13

Cal. Civ. Code § 1694.4(a)..............................................................................13

Cal. Civ. Code § 1694.4(c)..............................................................................13

Cal. Civ. Code § 1812.80 ................................................................................11

Cal. Civ. Code § 1812.82 .................................................................... 7, 8, 9, 18

Cal. Civ. Code § 1812.84(a) ............................................................................24

Cal. Civ. Code § 1812.84(b) ...........................................................................18

Cal. Civ. Code § 1812.85 ................................................................................17

Cal. Civ. Code § 1812.85(b)(1)........................................................................17

Cal. Civ. Code § 1812.89(2) ...........................................................................16

Cal. Civ. Code § 1812.91 ........................................................................ 12, 13

Cal. Civ. Code § 1812.93 ................................................................................10

Cal. Civ. Code § 1812.94 ........................................................................ passim

Cal. Civ. Code § 1983 .....................................................................................21

N.Y. Gen. Bus. Law § 628 ..............................................................................15

# TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ....................................................................... 4, 6, 25

Fed. R. Civ. P. 12(b)(6) ....................................................................... 4, 7, 25

Merriam-Webster Online Dictionary, http://www.merriam-webster.com (Oct.
13, 2016) ..................................................................................................8

# I.      **INTRODUCTION.**

SoulCycle Inc. ("SoulCycle" or the "Company") is a rapidly growing fitness company that primarily sells indoor group cycling classes ("Classes").  It is not a traditional gym offering memberships; rather, SoulCycle offers its customers the opportunity to buy one Class at a time, or a series of 5, 10, or more Classes without entering into any long-term membership contract.

Plaintiff Marko Cavka ("Cavka") chose to go onto SoulCycle's website and buy a single Class.  On its website, SoulCycle displays its Terms and Conditions ("Terms"), to which all customers, including Cavka, must agree prior to purchase, as well as Frequently Asked Questions ("FAQs") and other information, including information prominently disclosing the expiration date of Classes.  A customer can choose to print the Terms, the FAQs, or other web screen shots at any time, and Cavka did, in fact, print the Terms and attach them to his complaint ("FAC").

Cavka does not allege that he: (1) was not provided with the Terms prior to purchase, or that he was prevented from printing the Terms, FAQs or web screen shots off of his computer, or (2) was unaware of the expiration date associated with his Class, or (3) asked SoulCycle for a refund of his Class and was refused, or he attempted to use his Class, but was prevented from doing so, or that he asked SoulCycle to extend the Class' expiration date and was refused, or (4) signed a waiver, which SoulCycle then enforced against him, or (5) became disabled, could not use his Class and that he then asked SoulCycle for a refund and was refused.

Nevertheless, Cavka attempts to mischaracterize SoulCycle's business model and transform his purchase of a Class into a putative nationwide class action lawsuit for purported technical violations of various provisions of the California Health Studio Services Contract Law ("HSSCL") that do not apply to Cavka's experience as well as a violation of the "unlawful" prong of California's Unfair Competition Law ("UCL").  Specifically, Cavka attempts to capitalize on the following technical provisions of the HSSCL, which he assumes apply to

1  SoulCycle and which he claims SoulCycle violated:  (1) SoulCycle allegedly did

2  not provide him a copy of his contract; (2) the expiration date for his Class was

3  allegedly not displayed in 14 point font; (3) he allegedly was not told of his right to

4  cancel his class; (4) SoulCycle allegedly requires customers to sign a waiver (that

5  he does not allege he signed), and (5) disabled customers (which Cavka does not

6  allege he was) are supposedly not informed of their rights to obtain a refund.

7  Cavka's allegations fail for two independent reasons.

8       First, Cavka has not sufficiently alleged that SoulCycle violated two of the

9  HSSCL provisions upon which he sues.  Specifically, SoulCycle complied with the

10  HSSCL by making available to Cavka a copy of the contract he entered into when

11  he purchased his Class.  The contract was clearly provided to him, and Cavka could

12  have printed it had he chosen to do so.  In response to SoulCycle's prior motion to

13  dismiss, Cavka amended his complaint to argue that the contract provided to him

14  was not statutorily compliant (based on his other alleged violations), but this

15  attempt at bootstrapping a violation does not save his claim.  Similarly, Cavka's

16  claim premised on SoulCycle's requirement that customers sign waivers of personal

17  injury and property before participating in Classes fails for the simple reason that

18  the HSSCL does not prohibit such waivers.  As such, these allegations must be

19  dismissed because SoulCycle complied with the HSSCL.  (*See* Section IV).

20       Second, Cavka does not have standing to assert any of the alleged technical

21  violations of the HSSCL, and, as a result, the Court does not have subject matter

22  jurisdiction.  California law and Article III do not permit Cavka to sue under the

23  HSSCL (and therefore, the UCL) without suffering an actual injury that is casually

24  related to the purported violations of the HSSCL.  Yet that is exactly what Cavka

25  seeks to do here.  He does not allege that he was damaged by any of the purported

26  technical violations: (1) there is no allegation that Cavka suffered any monetary

27  harm resulting from his decision not to print the contract off the website at the time

28  of his Class purchase; (2) there is no allegation that Cavka suffered monetary harm

from viewing the clearly disclosed expiration date in whatever font he viewed it in, (3) there is no allegation that Cavka tried to cancel his Class, much less that SoulCycle refused his request, (4) there is no allegation that Cavka signed a waiver, much less that he attended a Class, or was hurt, or that SoulCycle enforced such a waiver against him, or (5) that Cavka became disabled, much less that he asked SoulCycle to refund his money as a result and that SoulCycle refused.  Instead, Cavka argues that he suffered purported economic harm because he paid $30 for a Class that he supposedly was unable to attend during the 30 days before it expired. Such a contract, however:

> [i]s effectively an option to obtain . . . personal training sessions . . . .[Plaintiff's] decision not to use the sessions and thus not to exercise that option does not mean that she was harmed, it means she chose not to use the sessions.  There is no evidence that [Plaintiff] did not obtain the benefit of her bargain – which was the option and ability to obtain . . . personal training sessions within a specified time period.

(Notice of Lodgment and Lodgment of Foreign Authorities in Support of Motion of Defendant SoulCycle Inc. to Dismiss Class Action Complaint, Ex. A, (Statement of Decision, *Pickering v. 24 Hour Fitness USA, Inc.*, CGC-05-446492 (Cal. Super Ct. S. F. Cnty. June 8, 2009) ("*Pickering* Statement of Decision") at 5.)[1]

Every court that has addressed this question in relation to health club laws has held that payment for a Class does not confer standing to sue for unrelated violations.  *Id.* at 6; *accord Wendt v. 24 Hour Fitness USA, Inc.*, 2015 WL 1344819, at *2 (N.D. Tex. Mar. 24, 2015), *aff'd* 821 F.3d 547 (5th Cir. 2016); *Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 28-29 (D. Mass. 2006);

---

[1] While district courts in California "generally decline to consider an unpublished California decision when there is other published persuasive or binding authority on which to rely[,] . . . when there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, 2015 WL 4163008, at *12 n.24 (C.D. Cal. July 9, 2015) (citing *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)) (stating that the Court "may consider unpublished state decisions, even though such opinions have no precedential value" and that unpublished opinions may still "lend[] support" to a certain position regarding California law).  Because our research has not located any other authority deciding standing under the HSSCL, it is proper for the Court to consider this unpublished decision in its analysis.

1     *Melino v. Equinox Fitness Club*, 6 A.D.3d 171, 172 (N.Y. App. Div. 1st Dep't

2     2004); *DeRiso v. Synergy USA*, 6 A.D.3d 152, 152-153 (N.Y. App. Div. 1st Dep't

3     2004). In an attempt to evade this precedent, Cavka posits that he was harmed

4     simply because he paid consideration for a contract that he now alleges was void

5     under the HSSCL. This attempt fails: a court interpreting a similar health club law

6     as well as analogous statutes under California law have held that this argument does

7     not confer standing. *See Wendt*, 2015 WL 1344819, at *7 (finding no standing);

8     *Adelman v. Spark Networks, Ltd.*, 2008 WL 2108667, at *2 (Cal. Ct. App. 2d May

9     20, 2008) (finding no standing). Therefore, Cavka's purported technical violations

10    are insufficient to create standing to sue under the HSSCL. (*See* Section V).

11         Because Cavka's UCL claim is predicated entirely on the HSSCL claims for

12    which he lacks standing, Cavka's Complaint should be dismissed in its entirety

13    under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Section VI).

14    **II.**      **STATEMENT OF FACTS.**

15         **A.**      **SoulCycle's Pay-Per -Class Purchase Structure.**

16         SoulCycle offers Classes to its customers. (FAC ¶ 9). To purchase a Class, a

17    customer must open an account. To do so, customers click to affirmatively signify

18    their agreement to abide by SoulCycle's Terms.[2] (FAC ¶¶ 13, Ex. A ("This policy

19    governs your use of the SoulCycle website . . . and the SoulCycle Mobile

20    Application (the 'App'). . . . ACCEPTANCE OF TERMS By using the Website or

21    App, you signify your acceptance of the Terms and Conditions. If you do not agree

22    to this, please refrain from using the Website or App.").)

23         Unlike health studios where customers buy a membership to use a fitness

24    establishment for a specified period of time, SoulCycle has a "pay-per-class

25

26    [2] As discussed more fully in SoulCycle's Request for Judicial Notice, filed with this motion, when considering this motion to dismiss, this Court may, pursuant to the

27    Ninth Circuit's "incorporation by reference" rule, take judicial notice of and consider certain documents outside of the pleadings "without converting the Rule

28    12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

1   model." (Request for Judicial Notice in Support of Motion of Defendant SoulCycle

2   Inc. to Dismiss First Amended Class Action Complaint ("RJN"), Ex 1, at 4.)

3   Customers can choose only to buy one Class, or they can buy a series of 5, 10, 20,

4   30, or 50 Classes. (RJN, Ex. 2). The cost of a Class depends on the type of Class

5   purchased and how many are purchased. (*See* FAC ¶ 11; RJN, Ex. 2.) Classes are

6   available for purchase online at soul-cycle.com, using the SoulCycle web

7   application ("App"), or in a studio, among others. (RJN, Ex. 1, at 70.) Many of

8   SoulCycle's customers buy their Classes using the website. (*See id.* at F-8.)

9       When a customer would like to purchase a Class on the website, he is

10  brought to a screen which asks him to select the number of Classes he would like to

11  purchase (the "Selection Screen"). (RJN, Ex. 2; *see also* FAC ¶ 12.) Immediately

12  above the "select" button for each option, which one must choose to select the Class

13  or Classes to buy, SoulCycle clearly informs the customer of the expiration date for

14  the Class(es) as well as the cost. (RJN, Ex. 2.) For example, a single Class expires

15  in 30 days. (*Id.*; *see also* FAC ¶ 11.) As one might expect, the more Classes a

16  customer buys, the longer the customer has to use them. (FAC ¶ 11.) The fact that

17  Classes expire is also disclosed in the Terms, which provide: "You should be

18  aware that classes and series expire . . . ." (FAC, Ex. A at 5.)

19      At the bottom of the Selection Screen is a hyperlink to SoulCycle's FAQs,

20  which inform customers about SoulCycle's policies, including its cancellation

21  policy. (RJN, Ex. 3 at "What is the cancellation policy for a Tiered Pricing

22  Program purchase?".) The FAQ states that "a customer may cancel its Tiered

23  Pricing Program purchase up to five days after the purchase of the series with

24  written notice, unless otherwise provided by applicable law." (*Id.*)

25      Once a customer selects the number of Classes to purchase, the customer is

26  brought to a screen for inputting payment method (the "Payment Screen"). (FAC

27  ¶ 12.) Immediately below the payment information is a box that the customer must

28  click that states that the customer "understand[s] and accept[s] the **terms and**

-5-

1  **conditions**." (RJN, Ex. 4 (emphasis in original); *see also* FAC ¶ 13.) The bolded

2  phrase "terms and conditions" is a hyperlink that when clicked will bring the

3  customer to another page displaying the complete Terms. (FAC ¶ 13, Ex. A.)

4      Once a customer buys a Class, the customer is e-mailed a "Rider Receipt,"

5  which notifies the customer of the number of Classes purchased, amount paid, and

6  method of payment. (FAC, Ex. B.) A customer can then reserve a bike for a Class

7  (sometimes referred to as a "ride" or "rides") at a specific date and time online,

8  with the App, or directly with a SoulCycle studio. (*See* RJN, Ex. 1 at 64, 70.)

9      **B.**    **The Plaintiff's Purchase of a Single Class.**

10      Cavka alleges that he bought one Class in July 2016 for $30 through the

11  SoulCycle website. (FAC ¶ 21.) There are thirteen SoulCycle locations in

12  Southern California. (RJN, Ex. 5.) He claims he was "unable to reserve" a bike

13  before it expired 30 days later but does not explain why. (FAC ¶ 25.) For example,

14  Cavka does not allege whether he was unable to use his Class because he chose to

15  let the Class expire or because of personal scheduling conflicts that allegedly

16  rendered him unable to take one 45 minute Class during a 30 day period. He

17  further does not allege that he contacted SoulCycle to ask that the expiration date be

18  extended or to use his expired Class.

19  **III.**    **LEGAL STANDARD.**

20      Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to

21  dismiss a complaint for lack of subject matter jurisdiction. When such a motion is

22  brought, "the plaintiff has the burden of proving that the court has subject matter

23  jurisdiction." *Robbins v. Hyundai Motor Am.*, 2014 WL 4723505, at *2, 8-9 (C.D.

24  Cal. Aug. 7, 2014) (Staton, J.) (internal citations omitted) (dismissing federal claim

25  where plaintiff lacked Article III standing and dismissing UCL claim for failure to

26  prove falsity and reliance). "Dismissal for lack of subject matter jurisdiction is

27  appropriate if the complaint, considered in its entirety, on its face fails to allege

28  facts sufficient to establish subject matter jurisdiction." *Marino v. Countrywide*

1  *Fin. Corp.*, 26 F. Supp. 3d 955, 960 (C.D. Cal. 2014) (Staton, J.) (dismissing

2  declaratory/injunctive relief claim and UCL claim seeking injunctive relief for lack

3  of subject matter jurisdiction) (quoting *In re Dynamic Random Access Memory*

4  *(DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008)).

5      Under Federal Rule of Civil Procedure 12(b)(6), "[i]n order to survive

6  dismissal … a complaint must set forth 'more than labels and conclusions, and a

7  formulaic recitation of the elements of a cause of action will not do.'" *Forcellati v.*

8  *Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1158 (C.D. Cal. 2012) (internal citation

9  omitted).  "A complaint must (1) 'contain sufficient allegations of underlying facts

10  to give fair notice and to enable the opposing party to defend itself effectively,' and

11  (2) 'plausibly suggest an entitlement to relief, such that it is not unfair to require the

12  opposing party to be subjected to the expense of discovery and continued

13  litigation.'" *Do v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 5593935, at *3

14  (C.D. Cal. Nov. 17, 2011) (Staton, J.) (dismissing UCL claim for lack of standing,

15  among other things) (internal citation omitted).  Although the Court must accept

16  factual allegations as true, "it 'is not bound to accept as true a legal conclusion

17  couched as a factual allegation.'" *Id.* at *3 (internal citation omitted).  The Court

18  also need not accept assertions contradicted by judicially noticed facts.  *Gonzalez v.*

19  *Planned Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014).

20  **IV.   THE PLAINTIFF'S CLAIM ASSERTING CERTAIN VIOLATIONS**
21  **OF THE HSSA MUST BE DISMISSED.**[3]

22      **A.   SoulCycle Complied with § 1812.82.**

23  [3] SoulCycle does not concede that the HSSCL applies to SoulCycle's business model. The HSSCL was designed to protect against "high pressure sales tactics,"
24  as a result of which one may feel "obligated to sign a contract immediately without adequate time" to consider the decision. *See, e.g.,* Cal. Bill Analysis, S.B. 581
25  Assem., Sept. 2, 2005 ("Consumers sometimes give into high pressure sales tactics"). That concern is inapplicable here, where the plaintiff bought his single
26  Class on the website and there is no suggestion in the FAC that he did so because SoulCycle forced him to do so using high pressure sales tactics.
27  Nevertheless, as Cavka: (a) has not demonstrated that SoulCycle violated certain provisions of the HSSCL; and (b) does not have standing to assert a claim under the
28  HSSCL, SoulCycle is not now challenging the applicability of the HSSCL. It does, however, expressly reserve all rights to do so, if needed, in the future.

1    The HSSCL requires that "[a] copy of the written contract shall be *given* to the

2    customer at the time he signs the contract."  Cal. Civ. Code § 1812.82 (emphasis

3    added). To give means "to put into possession of another for his or her use." ("give,"

4    Merriam-Webster Online Dictionary, http://www.merriam-webster.com (Oct. 13,

5    2016).)  The HSSCL does not mandate that the contract must be hand delivered.

### 1.    SoulCycle Gave Cavka the Contract.

7    SoulCycle "gave" Cavka a copy of the contract upon his purchase of the

8    Class.  When Cavka selected one class on the Selection Screen, he was informed

9    that it would cost $30 and that it would expire in 30 days.  (*See* FAC ¶¶ 10, 21; *see*

10   *also* RJN, Ex. 2.)  At the bottom of this web page, SoulCycle provided a hyperlink

11   to SoulCycle's "FAQ," which informed Cavka that "[a] customer may cancel its

12   Tiered Pricing Program purchase up to five days after the purchase of the series

13   with written notice, unless otherwise provided by applicable law."  (RJN, Ex. 3 at

14   "What is the cancellation policy for a Tiered Pricing Program purchase?".)[4]

15   Cavka then would have viewed the Payment Screen where SoulCycle

16   required him to click a box agreeing that he "underst[ood] and accept[ed] the **terms**

17   **and conditions**."  (RJN, Ex.4 (emphasis in original); *see* FAC ¶ 13.)  SoulCycle

18   provided a full copy of the Terms via a hyperlink.  (FAC ¶ 13, Ex. A.)  In addition,

19   Cavka acknowledges that after completing his purchase, SoulCycle e-mailed him a

20   "Rider Receipt," which confirmed his purchase of one Class for $30.  (FAC ¶ 22.)

21   When preparing his FAC, Cavka was able to print out the Terms, the Rider

22   Receipt, and the waiver form; he could have printed all of those documents – and

23   the FAQs and web screenshots – at the time of his purchase as well.  As a result,

---

[4] Although Cavka purports to allege that the "FAQ" "is not a part of the actual written contract between SoulCycle and its customers" (FAC ¶ 15), such an allegation is a legal conclusion that is given no weight.  For example, in *U.S. v. Mednansky*, the court rejected the defendants' contention that a contract was formed with another party because it was a legal conclusion couched as a factual allegation.  2011 WL 844956, at *3 (S.D. Cal. Mar. 8, 2011).  The Court explained, "[t]hough the [defendants] allege they considered Tobin's representations to constitute a binding oral contract …, their belief doesn't make it so."  *Id.*

1  SoulCycle gave (or put into Cavka's possession) the entire contract between the

2  Company and Cavka, which he was free to review, print, and save when and as he

3  saw fit.  Moreover, although Cavka purports to allege that "the actual, written

4  contracts between SoulCycle and all of its California customers include only two

5  conceivable documents – the 'Terms and Conditions' …and the … 'Ryder [sic]

6  Receipt'" (FAC ¶ 15), this allegation is given no weight because it is a legal

7  conclusion.[5]  For example, in *Cheren v. Compass Bank*, plaintiffs alleged in their

8  complaint that "the conditional approval and April 12 Email constitute[d] the

9  binding contract at issue."  2012 WL 5381445, at *4 (D. Ariz. Nov. 2, 2012).  The

10  Court disagreed, holding that "[t]his is a legal conclusion couched as a factual

11  allegation, which the Court need not take as true."  *Id.*

### 2.    The HSSCL Does Not Require SoulCycle to Provide a Statutorily-Compliant Contract.

14      In response to SoulCycle's motion to dismiss, the FAC claims that SoulCycle

15  violated § 1812.82 by failing to give Cavka a contract that contained the "required

16  statutory terms under the HSSCL." (FAC ¶ 18(a).)  No such requirement actually

17  exists under the statute.  The HSSCL simply requires that "[a] copy of the written

18  contract shall be given to the customer at the time he signs the contract."  Cal. Civ.

19  Code § 1812.82.  Critically absent from this statutory language is the phrase

20  "statutorily compliant," which Cavka attempts to add.  (FAC ¶ 22.)  Moreover, the

21  Court should reject his bootstrapping, as accepting this argument would necessarily

22  mean that a health studio violates this provision any time it is alleged to violate any

23  other provision of the HSSCL.  This overreaching should be rejected.

---

[5] Similarly, the Court does not have to accept as true Cavka's allegations that the Terms "provide no information related to a contractual relationship between SoulCycle and its customers or to the terms and conditions related to the health studio services provided by SoulCycle to its customers" (FAC ¶ 13), or that "most of the purported 'terms and conditions' listed concern solely SoulCycle's rights and interests" (*id.*), because the Terms are attached as Ex. A and the Court may review and analyze the Terms to determine their true content.

1    Therefore, Cavka's assertion that SoulCycle violated the HSSCL by failing

2    to give him a copy of the contract at the time of his purchase must be dismissed.

3    **B.    SoulCycle's New Rider Waiver Form Does Not Violate the HSSCL.**

4

5    Cavka's allegation that SoulCycle violated the HSSCL by requiring

6    customers to execute waivers (*see, e.g.*, FAC ¶ 39(d)), must be dismissed because

7    the HSSCL does not prohibit SoulCycle from seeking a waiver for personal

8    injuries, valuables, and personal property.  Quite the contrary, the HSSCL only

9    prohibits a health studio from obtaining a waiver "of the provisions *of this title*,"

10   meaning the HSSCL.  Cal. Civ. Code § 1812.93 (emphasis added).

11   In response to SoulCycle's original motion to dismiss, the FAC adds an

12   allegation that the New Rider Waiver form requires riders to "waive certain

13   (unidentified) provisions of the HSSCL." (FAC ¶ 18(d).  The New Rider Waiver

14   form, however, does not require customers to waive the protections of the HSSCL;

15   it simply requires customers to acknowledge that they have assumed the risk for

16   participating in the Class and release SoulCycle for personal injuries or property

17   loss related to participation in the Classes. (*See* FAC, Ex. C.)  Thus, it is not

18   surprising that Cavka fails to identify any particular provision of the HSSCL that

19   the New Rider Waiver form purportedly requires customers to waive.  And, a

20   review of the form itself clearly establishes that it contains no such waiver. (*See*

21   FAC, Ex. C.)  Cavka's allegation to the contrary should be given no weight. *See,*

22   *e.g.*, *Kim Laube & Co. v. Wahl Clipper Corp.*, 2013 WL 12084741, at *10 (C.D.

23   Cal. Mar. 8, 2013) ("the meaning of contract language, including a release, is a

24   legal question") (internal citations omitted); *see also Neal v. Bank of Am.*, 2012 WL

25   3638762, at *2 (D. Ariz. Aug. 24, 2012) (holding that the Court did not need to

26   "accept as true" "whether an agreement amounts to a valid novation" because it was

27   a "legal inquiry") (internal citation omitted).  Therefore, the Court should dismiss

28   the claim that SoulCycle's New Rider Waiver form violates the HSSCL.

## V.   CAVKA LACKS STANDING TO SUE FOR THE ALLEGED VIOLATIONS OF THE HSSCL.

The plaintiff's HSSCL claim must also be dismissed because Cavka lacks standing under California law and Article III to assert such a claim.

### A.   Cavka Does Not Have Standing to Sue Under California Law.

Cavka lacks standing to bring his HSSCL claim because he has not suffered an injury that is causally related to SoulCycle's purported statutory violations. The California Legislature has declared that the purpose of the HSSCL is "to safeguard the public . . . by prohibiting or restricting . . . onerous contract terms . . . by which the public *has been injured* in connection with contracts for health studio services." Cal. Civ. Code § 1812.80 (emphasis added). "[T]he intent of the HSS[CL] is to prevent *harm* to consumers who enter into health studio contracts." (*Pickering* Statement of Decision at 6.) As such, the HSSCL only permits a customer to bring an action if he was "injured by a violation." Cal. Civ. Code § 1812.94. To establish standing to bring a claim under the HSSCL, a plaintiff must "demonstrate a causal connection between [the defendant's] actions and her alleged injury." (*Pickering* Statement of Decision at 5.)

In *Pickering*, the Court dismissed a putative class action brought for "alleged technical violations of the HSSCL" due to lack of standing "because [the plaintiff] ha[d] not demonstrated that she was caused any injury as a result of any alleged technical violations." (*Id.* at 5-6.) The plaintiff had entered into a contract for four personal training sessions that expired after six months. (*Id.* at 1-2.) She "did not attempt to use any of her training sessions" and did not receive a refund for the money she paid. (*Id.* at 3.) Pickering argued that the contract violated the HSSCL because the contract did not: (a) state the expiration date in 14 point or larger font; (b) include a provision that services would begin within six months of the contract; and (c) state the entity to whom the cancellation notice should be sent. (*Id.* at 4.) The Court dismissed the complaint because "[t]he evidence . . . demonstrate[d] that

1  even if technical provisions were not strictly complied with . . . there was no harm

2  caused to Pickering as a result of the alleged deficiencies." (*Id.* at 6.)

3      This decision, and the HSSCL's standing requirement, is consistent with

4  numerous decisions in other jurisdictions that have repeatedly held that "a plaintiff

5  lacks standing to sue under the state's version of a health club act when the plaintiff

6  cannot allege injury, even if the contract violates the act." *Wendt*, 2015 WL

7  1344819, at *2, 7 (dismissing claim for lack of standing under the Texas Health Spa

8  Act ("THSA")); *see also Melino*, 6 A.D.3d at 172 (upholding grant of motion to

9  dismiss due to lack of standing under the NY Health Club Services Law

10 ("NYHCSL") because plaintiff did not allege "that she . . . sustained loss or damage

11 because of the alleged discrepancies between the contract and the [NYHCSL]");

12 *Ruiz*, 447 F. Supp. 2d at 28-29 (plaintiff's claim for violation of the Massachusetts

13 Health Club Act ("MHCA") failed due to lack of standing).

14           **1.**   **Cavka's Allegation that He Paid for An Allegedly Void Contract Does Not Confer Standing.**

15

16     In a futile attempt to manufacture standing, the FAC alleges that since

17 § 1812.91 provides that "[a]ny contract for health studio services which does not

18 comply with the applicable provisions of this title shall be void and unenforceable

19 as contrary to public policy" (FAC ¶ 19), that Cavka was injured for paying $30

20 toward a void contract, and thus, has standing to sue. (FAC ¶ 24). Not so. A Court

21 interpreting the THSA already expressly rejected this assertion as a basis for

22 standing, which was upheld on appeal by the Fifth Circuit. *Wendt,* 2015 WL

23 1344819, *3, *aff'd* 821 F.3d 547 (5th Cir. 2016). In *Wendt*, the plaintiffs argued

24 that "they ha[d] suffered injury because they paid on a contract that did not adhere

25 to the requirements stated in the Health Spa Act, making the contract void." 2015

26 WL 1344819 at *3. The Court rejected that argument, holding that "[a]ssuming

27 without deciding that Plaintiffs' contracts are void because they violate the

28 [THSA], Plaintiffs must still allege injury in order to have standing to sue." *Id.* at

1  *6.  Since they could not show that they were damaged by any of the purported

2  technical violations, the Court held that the plaintiffs did not have standing.  *Id.*

3  The Fifth Circuit agreed, explaining that "[t]he text of [THSA] d[id] not

4  authorize a complete refund for *negligible technical violations* that otherwise cause

5  no harm."  *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547,  551 (5th Cir. 2016)

6  (emphasis added).  The plaintiffs were only entitled to actual damages under the

7  THSA – not disgorgement – and, as such, they "ha[d] not suffered an economic

8  injury that would give rise to Article III standing."  *Id.*  Quite the contrary,

9  Plaintiffs received "exactly what they paid for: access to a gym."  *Id.* at 550.

10  Similarly, a California court has also explicitly rejected this argument in the

11  context of Cal. Civ. Code § 1694.4, which governs dating service contracts (the

12  "DSCL").  The DSCL and the HSSCL contain almost identical damages[6] and

13  voidability provisions.[7]  In *Adelman*, the plaintiff had alleged that his contract

14  violated the DSCL because the contract didn't provide: (a) a three-day right of

15  recession; (b) a right to a full or partial refund upon a member's death or disability;

16  and (c) a right to a full or partial refund upon a member's relocation more than 50

17  miles from his home.  2008 WL 2108667, at *2.  The plaintiff argued that "the

18  membership contracts were void and unenforceable," which he claimed established

19  that he had "suffered an actual injury and damages."  *Id.*  The defendant disagreed,

20  stating that the plaintiff "received what he paid for."  *Id.*

21  /////

22  ———————

[6] *Compare* Cal. Civ. Code § 1812.94 ("Any buyer injured by a violation of this title may bring an action for the recovery of damages. Judgment may be entered for three times the amount at which the actual damages are assessed plus reasonable attorney fees.") *with*  Cal. Civ. Code § 1694.4(c) ("Any buyer injured by a violation of this chapter may bring an action for the recovery of damages in a court of competent jurisdiction. Judgment may be entered for three times the amount at which the actual damages are assessed.  Reasonable attorney fees may be awarded to the prevailing party.").

[7] *Compare* § 1812.91 ("Any contract for health studio services which does not comply with the applicable provisions of this title shall be void and unenforceable as contrary to public policy.") *with* Cal. Civ. Code § 1694.4(a) ("Any contract for dating services which does not comply with this chapter is void and unenforceable").

-13-

1  The lower court agreed with the defendant, finding that the plaintiff "suffered
2  no actual injury or damages as a result of the alleged violations of [the DSCL] for
3  purposes of either the statutory count or the other counts based on the alleged
4  statutory violation," which included a UCL claim. *Id.* at *6. The appellate court
5  affirmed, holding that the plaintiff "suffered no actual injury and was not damaged
6  as a result of [the defendant's] conduct in any manner and by any measure." *Id.*

7  Here, as in *Wendt* and *Adelman*, Cavka does not have standing simply
8  because he paid for a Class under a contract he claims is void (which it is not). The
9  HSSCL only provides for an award of actual damages, not disgorgement. Cal. Civ.
10  Code § 1812.94. And SoulCycle gave Cavka exactly what he paid for: the ability
11  to attend a Class within a specified time period.

12  **2.  Cavka Did Not Execute the New Rider Waiver Form, Did
13      Not Attend a Class, Was Not Hurt, and Was Not Thwarted
       in An Attempt to Hold SoulCycle Liable.**

14  As explained above, the New Rider Waiver form does not violate the
15  HSSCL. Even if it did (which it does not), Cavka lacks standing to assert that
16  SoulCycle violated the HSSCL by requiring customers to execute the New Rider
17  Waiver form before participating in a Class because:

18  • He has not alleged that he signed the waiver; indeed, the New Rider
19    Waiver form he attached to the FAC is unsigned (FAC, Ex. C),

20  • He has not alleged that he attended a Class; indeed, he alleges he was
21    "unable" to do so (FAC ¶ 25),

22  • He has not alleged he was hurt at the Class that he did not attend,

23  • He has not alleged that he attempted to hold SoulCycle liable as a result of
24    his non-existent injury at the Class he did not attend, and

25  • He has not alleged that SoulCycle enforced the waiver he never signed in
26    connection with a Class he did not attend and at which he was not hurt.

27  /////
28  /////

-14-

1    This situation is analogous to *Melino*, where the plaintiff alleged a violation

2  of the NYHCSL[8] because the contract "purport[ed] to exempt defendant from

3  liability for its own negligence." 6 A.D.3d at 172. The Court granted the

4  defendant's motion to dismiss because the "Plaintiff d[id] not allege that she ever

5  attempted to . . . hold defendant liable for negligence, but was prevented from doing

6  so because of the contract." *Id.*; *see also Ruiz*, 447 F. Supp. 2d at 26, 29 (court

7  rejected assertion that defendant's "provision limiting the liability of the health

8  club" violated the MCHA and held that plaintiff's "failure … to allege any injury

9  caused thereby deprive[d] her of standing").

10    So too here. Cavka has not alleged that he was prevented from seeking relief

11  against SoulCycle due to the waiver (nor could he since he never executed such a

12  waiver, attended a Class, or got hurt). Instead, the allegation of "injury" is that

13  Cavka paid $30 for a Class that he supposedly was "unable" to attend during its 30

14  day expiration period (which does not allege a HSSCL violation). (FAC ¶ 25.)

15  These allegations are not sufficient to confer standing to sue for an unrelated

16  violation. *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185, 186 (N.Y. App. Div.

17  1st Dep't 2004). For example, in *Sokoloff*, the plaintiff asserted that her contract

18  violated the NYHCSL because it "limit[ed] defendant's liability for personal injury

19  or property loss" and the alleged injury was her payment of her membership fees. 6

20  A.D.3d at 186. The Court rejected the plaintiff's argument and affirmed dismissal

21  of the complaint for lack of standing, holding that "[s]uch claim impermissibly 'sets

22  forth deception as both act and injury.'" *Id.* (internal citation omitted); *see also*

23  *DeRiso*, 6 A.D.3d at 153 (affirming dismissal of complaint seeking return of

24

25  [8] The HSSCL and the NYHCSL have almost identical damages provisions.
*Compare* Cal. Civ. Code § 1812.94 ("Any buyer injured by a violation of this title
26  may bring an action for the recovery of damages. Judgment may be entered for
three times the amount at which the actual damages are assessed plus reasonable
27  attorney fees.") *with* N.Y. Gen. Bus. Law § 628 ("Any buyer damaged by a
violation of this article may bring an action for recovery of damages. Judgment
28  may be entered in an amount not to exceed three times the actual damages plus
reasonable attorney fees.").

1   membership fees already paid because "[s]uch claim impermissibly 'sets forth

2   deception as both act and injury'").

3        Cavka has not been injured by the New Rider Waiver form and does not have

4   standing to assert this purported technical violation of the HSSCL.

5            **3.   Cavka Has Not Alleged That He Was Disabled, That He**
            **Sought to Cancel His Class, or That SoulCycle Refused.**
6

7        Cavka similarly does not have standing to assert that SoulCycle violated the

8   HSSCL by failing to include a provision in its contract explaining its refund policy

9   for individuals with a disability.  Cal. Civ. Code § 1812.89(2).

10       In *Wendt*, for example, the plaintiff asserted a violation of the THSA because

11  the contract failed to include required language regarding the refund policy upon

12  disability.  2015 WL 1344819 at *5.  The plaintiff, however, "did not die or become

13  disabled during his membership so he did not seek a refund based on death or

14  disability."  *Id.* at *6.  Given these facts, the Court held that:

15           [t]here [wa]s no evidence that Plaintiffs did not obtain the benefit of
            their contract ... Regardless of alleged deficiencies in the contractual
16           language, Plaintiffs received what they bargained for: use of a health
            club facility.  Plaintiffs do not assert facts showing injury other than
17           the money paid to 24 Hour in order to access a gym.  Plaintiff's
            money paid under the contracts *does not constitute injury because*
18           *they received exactly what they bargained for.*

19  *Id.* (emphasis added); *see also DeRiso*, 6 A.D.3d at 153 (rejecting NYHCSL claim

20  based on failure to include language that the contract could be cancelled due to

21  disability for lack of standing).

22       The same result follows here.  Cavka does not allege that:

23       •  Following his Class purchase, he became disabled;

24       •  As a result, he sought a refund from SoulCycle; and

25       •  SoulCycle refused him the refund he never sought.

26  Without such allegations, Cavka does not have standing to sue for a purported

27  technical violation of the HSSCL's requirement to include the refund policy for

28  disabilities in health studio contracts.

### 4.   Cavka Has Not Alleged That He Sought to Cancel His Class and That SoulCycle Refused.

Cavka similarly does not have standing to assert that SoulCycle violated the HSSCL by failing to include certain language notifying him of his cancellation right near his signature line.  Cal. Civ. Code § 1812.85(b)(1).

As an initial matter, SoulCycle informs its customers of their right to cancel their Class within five days in its FAQ.  (*See* FAC ¶¶ 15-16; RJN, Ex. 3  at "What is the cancellation policy for a Tiered Pricing Program purchase?" ("[A] customer may cancel its Tiered Pricing Program purchase up to five days after the purchase of the series with written notice, unless otherwise provided by applicable law.").)

Regardless, this situation is indistinguishable from *Pickering*, where the plaintiff alleged a violation of the HSSCL because her contract did not include all of the refund language required by § 1812.85.  (*Pickering* Statement of Decision at 4.)  The Court held that the plaintiff did not have standing to assert such a claim because "she did not attempt to cancel her contract within the 3-day period," and therefore "was not caused harm by the alleged defect."  (*Id.* at 6); *see also Melino*, 6 A.D.3d at 172-173 (upholding grant of a motion to dismiss for an alleged violation of the NYHCSL due to an alleged failure to properly disclose the customer's cancellation rights because plaintiff "d[id] not allege that she ever attempted to cancel the contract"); *DeRiso*, 6 A.D.3d at 153 (rejecting NYHCSL claim based on failure to include cancellation language due to lack of standing).  Similarly, here, Cavka has not alleged that he attempted to cancel the Class or that SoulCycle refused his request.  Without these allegations, he does not have standing to sue for the purported technical violation of the HSSCL.

### 5.   Cavka Has Not Alleged That He Was Injured Due to SoulCycle's Purportedly Improper Font Size For Displaying His Contract Length.

Finally, Cavka does not have standing to allege that his contract failed to contain a statement in "at least 14-point type that disclose[d] the length of the term

-17-

of the contract . . . above the space reserved for the signature." Cal. Civ. Code § 1812.84(b). As Cavka acknowledges, SoulCycle informed him of the length of the contract on the Selection Screen. (*See* FAC ¶ 11.) For his purchase of one Class, his contract expired in thirty days and that statement "Expires in 30 days" was prominently disclosed immediately above the select button. (RJN, Ex. 2.)

This situation is once again indistinguishable from *Pickering*, where the plaintiff unsuccessfully attempted to assert a violation of the HSSCL due to the alleged improper font size. (*Pickering* Statement of Decision at 4.) The Court rejected the claim because "even if the type size was not correct, no harm was caused to Pickering as a result of the purported type size defect." (*Id.* at 6.) So too here. Cavka has not alleged any injury related to the allegedly improper font size and he does not have standing as a matter of law.

### 6. Cavka Has Not Alleged That He Was Injured Due to SoulCycle's Purported Failure to Give Him His Contract.

Finally, Cavka does not have standing to allege that SoulCycle failed to give him his contract upon purchasing his Class as required by Cal. Civ. Code § 1812.82. As with the other purported HSSCL violations, Cavka has not alleged any injury related to his alleged failure to receive a copy of his contract (which is not surprising since SoulCycle actually gave him with a copy of the contract).

In summary, Cavka's HSSCL claims must be dismissed because he cannot allege an injury that is caused by any of the purported technical violations. Quite the contrary, his only purported "injury" is that he paid for a Class he did not use before it expired. Such a "loss" has already been held insufficient to confer standing. (*See, e.g., Pickering* Statement of Decision at 6 ("[E]ven if technical provisions were not strictly complied with . . . there was no harm.")); *Sokoloff*, 6 A.D.3d at 186 ("Such claim impermissibly 'sets forth deception as both act and injury.'").

/////

**B.    Cavka Does Not Have Article III Standing.**

Since Cavka lacks standing to sue under the state law statute that he invokes, the standing analysis may end there.  In any event, Cavka also lacks standing under federal law.  To have standing under Article III, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (internal citations omitted).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.* A plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* at 1549.  Moreover, an injury is only fairly traceable to the conduct of the defendant if the complaint "assert[s] conduct by Defendants which directly or indirectly led to the alleged harm."  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055-56 (N.D. Cal. 2012).

**1.    Cavka's Has Not Suffered an Injury in Fact.**

For all of the reasons previously demonstrated, Cavka has not suffered any injury in fact.  (*See* Section 5(A)).  In an attempt to create injury, the FAC argues that "[t]he public [wa]s also injured" by what Cavka alleges to be violations of the HSSCL.  (FAC ¶ 24).  The Supreme Court, however, has "consistently held that a plaintiff raising only a generally available grievance … and seeking relief that no more directly and tangibly benefits him than it does the public at large- does not state an Article III case or controvers*y*." *Lujan v. Defendants of Wildlife*, 504 U.S. 555, at 573-74 (1992); *see also Taisacan v. Camacho*, 660 F.2d 411, 414 (9th Cir. 1981) (internal citation omitted) ("'[S]tanding to sue may not be predicated upon an /////

1   interest … which is held in common by all members of the public"). That is

2   precisely what Cavka attempts here.

3           **2.   Cavka's Alleged Injury is Not "Fairly Traceable" to SoulCycle's Purported HSSA Violations.**

4

5         Cavka cannot meet the standing requirements under federal law, which

6   require a connection between the purported injury and the defendant's conduct.

7   Specifically, Cavka has not alleged an injury that is "fairly traceable" to

8   SoulCycle's purported violations of the HSSCL. His argument that he spent $30

9   for a Class he did not attend (FAC ¶¶ 25) is insufficient to confer standing. *See,*

10  *e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2015 WL 4317479, at *1 (N.D. Cal.

11  July 15, 2015); *see also Yagman v. Bray*, 2015 WL 10433429, at *4 (C.D. Cal. Dec.

12  29, 2015) (rejecting standing where plaintiff's alleged injury of obligation to make

13  monthly mortgage payments was 'fairly traceable' to defendants' conduct).

14        In *Google,* for example, a plaintiff asserted breach of contract and fraudulent

15  unfair competition claims against Google for improper disclosure of personal

16  information to third-party developers. 2015 WL 4317479, at *6. The Court

17  dismissed the complaint because the plaintiff's asserted injury of "battery and

18  bandwidth depletion" due to transmission of improper personal information was

19  "not 'fairly traceable' to the challenged action," because the transmissions alleged

20  did not "contain *any* personal information." *Id.*

21          **3.   Cavka Has Alleged Only a Bare Procedural Violation, Which Does Not Confer Standing.**

22

23        Since Cavka has not alleged economic harm, he solely alleges bare statutory

24  violations of the HSSCL. (*See, e.g.*, FAC ¶ 24 (alleging that Cavka was injured by

25  "not being made aware of his statutory rights").) The Supreme Court made clear in

26  *Spokeo*, however, that "a bare procedural violation, divorced from any concrete

27  harm, [cannot] satisfy the injury-in-fact requirement of Article III." 136 S. Ct. at

28  1549; *see also Jamison v. Bank of Am. N.A.*, 2016 WL 3653456, at *4 (E.D. Cal.

1    July 7, 2016); *Nokchan v. Lyft, Inc.*, 2016 WL 5815287, at *4 (N.D. Cal. Oct. 5,

2    2016). "To the contrary, 'Article III standing requires a concrete injury even in the

3    context of a statutory violation.'" *Stelmachers v. Verifone Sys., Inc.*, 2016 WL

4    6835084, at *3 (N.D. Cal. Nov. 21, 2016) (*quoting Spokeo*, 136 S. Ct. at 1549)

5    (dismissing FACTA claim for standing).

6       For example, in *Jamison*, the plaintiff alleged that the defendant failed to

7    account for insurance payments in payoff statements in violation of the Truth in

8    Lending Act. 2016 WL 3653456, at *4. The plaintiff further alleged that class

9    members would suffer "drastic consequences" if a payoff statement did not provide

10    an accurate view of their outstanding balance when they sought refinancing or were

11    facing foreclosure. *Id.* The Court held that the plaintiff had not asserted standing

12    because she failed to allege that "those circumstances ever arose"; for example, she

13    never alleged that she was injured after seeking refinancing. *Id.*

14       Similarly, the Court in *Nokchan* dismissed the plaintiff's complaint where the

15    plaintiff alleged "that he did not receive required disclosures in a separate document

16    or that he did not receive a summary of his rights under the" Fair Credit Reporting

17    Act ("FCRA"). 2016 WL 5815287, at *4. Instead, he "allege[d] only that

18    Defendant did not comply with the procedural requirements" of the FCRA. *Id.* at

19    *5. The Court dismissed the complaint because the plaintiff did not allege that he

20    "was confused about his rights or that he would not have consented to the

21    background checks had he understood his rights." *Id.* As such, the Court

22    concluded that "no real harm" existed. *Id.* at *4. In explaining its ruling, the Court

23    explicitly rejected the pre-*Spokeo* decisions that had held that a plaintiff could

24    suffer an "informational injury" when a defendant "fail[ed] to provide disclosures

25    that [we]re required under the FCRA." *Id.* at *9. Finally, in *Kaufman v. City of*

26    *San Francisco*, the plaintiff asserted a § 1983 action because he received notices

27    that "were deficient under state law because they failed to indicate a hearing could

28    be requested by mail." 434 F. App'x 583, 585 (9th Cir. 2011). The Court held that

1   the plaintiff did not have standing to "challenge the sufficiency of the notice

2   because he ha[d] no redressable injury." *Id.*

3       The same result is compelled here. Cavka has failed to connect the purported

4   technical HSSCL violations to any concrete harm that he allegedly suffered. Quite

5   the contrary, he appears to argue standing by way of an alleged "informational

6   injury." Such an attempt fails here because Cavka was not deprived of any

7   information. Rather, Cavka challenges the *manner in which* SoulCycle disclosed it.

8   He complains that SoulCycle: (1) provided the contract electronically on the

9   website instead of giving him (somehow) a written copy when Cavka could easily

10   have printed it, (2) used an improper font size for a disclosure that was undeniably

11   made, and (3) provided the cancelation disclosure on the website in the FAQs

12   instead of the Terms. As to the alleged failure to disclose the rights of disabled

13   riders, Cavka never became disabled and was never "injured" by the alleged

14   violation. Cal. Civ. Code § 1812.94.

15       *Lee v. Hertz Corp.* is instructive. There, the Court rejected the plaintiff's

16   claim of informational injury because an Fair Credit Reporting Act "disclosure was

17   not in the format required by the statute." 2016 WL 7034060, at *5 (N.D. Cal.

18   Dec. 2, 2016); *see also Case v. Hertz Corp.*, 2016 WL 6835086, at *4-5 (N.D. Cal.

19   Nov. 21, 2016) (finding no standing); *Nokchan*, 2016 WL 581287, at *9 (rejecting

20   standing for an alleged informational injury under the FCRA because "the failure to

21   include certain disclosures" did not result in a concrete harm). As in *Lee,* Cavka

22   lacks standing under Article III.

23   **VI.**   **THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE UCL.**

24       **A.**   **Cavka's UCL Claim Must Be Dismissed Because it Is Solely**

25              **Predicated on Violations of the HSSCL, Which Fail.**

26       To state a claim under the "unlawful" prong of the UCL, a plaintiff must

27   allege a violation of some other law. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949

28   (2002). Here, Cavka predicates his claim that SoulCycle acted "unlawful[ly]" upon

alleged violations of the HSSCL.  (FAC ¶ 47 ("Pursuant to its violations of the HSSCL …").)[9]  Cavka's HSSCL claims, however, must be dismissed for lack of standing (*see* Section V(A)).  As a result, any claim of "unlawful" conduct based on the supposed violation of those laws necessarily fails as well.  *See, e.g., Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) (Staton, J.) ("Plaintiffs' UCL claim 'stands or falls depending on the fate of the antecedent substantive causes of action.'").

**B.     In Any Event, Cavka Has Not Alleged Standing Under the UCL.**

Even if Cavka stated a UCL claim (which he has not), to have standing, a class action plaintiff must have "suffered injury in fact and . . . lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code § 17204.  "Moreover, a plaintiff must demonstrate that his economic injury came 'as a result of the unfair competition.'"  *Ballard v. Bank of Am., N.A.*, 2014 WL 503143, at *2 (C.D. Cal. Jan. 28, 2014) (Staton, J.) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011)).  "When a UCL action is based on an unlawful business practice . . . there must be a causal connection between the harm suffered and the unlawful business activity."  *Thieme v. Cobb*, 2016 WL 3648531, at *6 (N.D. Cal. July 8, 2016) (quoting *Daro v. Super. Ct.*, 151 Cal App. 4th 1079, 1099 (2007)); *see also Do*, 2011 WL 5593935, at *5 (plaintiff must "prove that the alleged unfair business practice caused the plaintiff harm"; dismissing with prejudice UCL claim for lack of standing).  The necessary "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Thieme*, 2016 WL 3648531, at *6.

/////

---

[9] To the extent the FAC attempts to assert a violation of the unfair prong, it fails because Cavka simply asserts bare legal conclusions.  (FAC ¶ 49 ("SoulCycle's acts or omissions as alleged herein are unfair because the utility of the conduct is outweighed by the gravity of the harm it causes" and "because it offends public policy and/or is unethical, oppressive, unscrupulous, and substantially injurious to consumers.").)

1    Cavka lacks standing  to assert a UCL claim here because his alleged

2    economic injury – that he lost the amount he paid for his Class because he did not

3    use it before it expired (FAC ¶ 25) – has no causal relationship whatsoever to the

4    purported technical violations of the HSSA (as detailed above in Section V(A)).[10]

5    (*Cf.* Civil Minutes – General at 16-17, *Kissel v. Code 42 Software, Inc.*, 8:15-CV-

6    01936  (C.D. Cal. Apr. 14, 2016) (Staton, J.) (finding standing under the UCL's

7    unlawful prong where the alleged violations were the requirements to impose

8    automatic renewal terms because the injury was the charge imposed through

9    automatic renewal).)

10   For example, Cavka asserts that SoulCycle violated the HSSCL because his

11   contract did not detail the refund policy for disabled individuals (FAC ¶ 18(e)), yet

12   he has not alleged that he is disabled, that this disability prevented him from taking

13   his Class, or that he sought a refund due to a disability, and that he was refused.

14   Ultimately, Cavka seeks to have his $30 Class payment act as injury, even though

15   he would have paid that sum of money regardless of whether SoulCycle had

16   complied with the purportedly violated sections of the HSSCL.  In such a situation,

17   Cavka does not have standing to assert his UCL claim here and the claim must be

18   dismissed. *See, e.g.*, *Ballard*, 2014 WL 503143, at *2.

## VII.   CAVKA LACKS STANDING TO SEEK INJUNCTIVE RELIEF UNDER THE UCL.

21   "Plaintiffs must show standing with respect to each form of relief sought."

22   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).  To seek

23   injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in

24   fact' that is concrete and particularized; the threat must be actual and imminent,

---

[10] To the extent that Cavka is attempting to state a claim based on the expiration date of his Class, it would fail because expiration dates are required under the HSSCL. Cal. Civ. Code § 1812.84(a) (contracts for health studios may not "exceed three years"); *Pickering* Statement of Decision at 7 ("[T]he insertion of an expiration provision is not only *not* unfair or unconscionable; it is mandated by law.").

1   not conjectural or hypothetical; it must be fairly traceable to the challenged action

2   of the defendant; and it must be likely that a favorable judicial decision will

3   prevent or redress the injury.  *Tigbao v. QBE Fin. Inst. Risk Servs., Inc.*, 2014 WL

4   5033236, at *2-3 (C.D. Cal. July 24, 2014) (Staton, J.) (rejecting standing for

5   injunctive relief) (internal citation omitted).

6         For example, in *Delarosa v. Boiron, Inc.*, the plaintiff sought injunctive relief

7   for a UCL false advertising claim.  2012 WL 8716658, at *4 (C.D. Cal. Dec. 28,

8   2012) (Staton, J.).  This Court held that the plaintiff did not have standing to seek

9   injunctive relief; because the plaintiff did "not intend to purchase [the product]

10   again, there [wa]s not a 'sufficient likelihood that she w[ould] again be wronged in

11   a similar way.'"  *Id.*; *see also Wang v. OCZ Tech. Grp. Inc.*, 276 F.R.D. 618, 626

12   (N.D. Cal. 2011) (rejecting standing to seek injunctive relief for UCL claim because

13   plaintiff could not demonstrate future injury even though defendant "maintain[ed]

14   the same marketing materials and website pages and thereby continue[d] to violate

15   the false advertising laws").

16         The same result follows here.  Cavka alleges that he purchased a single Class

17   for $30, but has not alleged that he intends to purchase another Class in the future.

18   (*See* FAC ¶ 21.)  As such, he does not have standing to assert injunctive relief

19   because "any loss of value … has already occurred."  *Wang*, 276 F.R.D. at 626.

20   **VIII.  CONCLUSION.**

21         In summary, Cavka's FAC should be dismissed under Federal Rules of Civil

22   Procedure 12(b)(1) and 12(b)(6).

23                                    Respectfully submitted,

24                                    DLA PIPER LLP (US)

25   Dated:  December 16, 2016     By: */s/Shirli F. Weiss*
                                        SHIRLI F. WEISS
26                                      KEARA M. GORDON
                                        Attorneys for Defendant SOULCYCLE INC.
27

28