SHIRLI F. WEISS (Bar No. 079225)
shirli.weiss@dlapiper.com
KATHERINE J. PAGE (Bar No. 259556)
katherine.page@dlapiper.com
**DLA PIPER LLP (US)**
550 South Hope Street, Suite 2300
Los Angeles, CA 90071-2678
Tel: 213.330.7700
Fax: 213.330.7701

KEARA M. GORDON *(pro hac vice)*
keara.gordon@dlapiper.com
COLLEEN M. GULLIVER *(pro hac vice)*
colleen.gulliver@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Attorneys for Defendant
SOULCYCLE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MARKO CAVKA, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SOULCYCLE, INC., a Delaware corporation,<br><br>　　　　Defendants. | CASE NO. 8:16-CV-01821 JLS (KESx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT SOULCYCLE INC. TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Fed. R. Civ. Proc. 12(b)(1) and (b)(6)<br><br>Date:　　May 12, 2017<br>Time:　　2:30 p.m.<br>Judge:　　Hon. Josephine L. Staton<br>Ctrm:　　10A |

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS ................................................................... 3

        A.      SoulCycle's Pay-Per-Class Purchase Structure ...................... 3

        B.      The Plaintiff's Purchase of a Single Class ............................. 5

III.    LEGAL STANDARD ........................................................................ 6

IV.     CAVKA FAILS TO STATE A CLAIM FOR CERTAIN
        VIOLATIONS OF THE HSSCL. ........................................................ 7

        A.      SoulCycle Gave Cavka the Contract ...................................... 7

        B.      SoulCycle's New Rider Waiver Form Does Not Violate the
                HSSCL .................................................................................... 8

V.      CAVKA LACKS STANDING TO SUE FOR THE ALLEGED
        VIOLATIONS OF THE HSSCL ....................................................... 10

        A.      Cavka's Allegation that He Paid for An Allegedly Void Contract
                Does Not Confer Standing ................................................... 12

        B.      Cavka Did Not Execute the New Rider Waiver Form, Did Not
                Attend a Class, Was Not Hurt, and Was Not Thwarted in An
                Attempt to Hold SoulCycle Liable ....................................... 14

        C.      Cavka Has Not Alleged That He Was Disabled, That He Sought
                to Cancel His Class, or That SoulCycle Refused.................. 15

        D.      Cavka Has Not Alleged That He Sought to Cancel His Class and
                That SoulCycle Refused ....................................................... 16

        E.      Cavka Has Not Alleged Injury Due to Purportedly Improper
                Font Size In Displaying His Contract Length....................... 18

        F.      Cavka Has Not Alleged That He Was Injured Due to
                SoulCycle's Purported Failure to Give Him His Contract ..... 19

VI.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
        UCL ................................................................................................ 20

        A.      Cavka's UCL Claim Must Be Dismissed Because It Is Solely
                Predicated on Violations of the HSSCL, Which Fail ........... 20

        B.      In Any Event, Cavka Has Not Alleged Standing Under the UCL ..... 21

VII.    CAVKA LACKS STANDING TO SEEK INJUNCTIVE RELIEF............ 22

VIII.   CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alonzo v. Maximus, Inc.*
832 F. Supp. 2d 1122 (C.D. Cal. 2011) (Staton, J.)..................................................20

*Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*
2015 WL 4163008 (C.D. Cal. July 9, 2015) ..........................................................11

*Anderson v. The Hain Celestial Grp., Inc.*
87 F. Supp. 3d 1226, 1235 (N.D. Cal. 2015)..........................................................24

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .....................................................................................13, 18

*Ballard v. Bank of Am., N.A.*
2014 WL 503143 (C.D. Cal. Jan. 28, 2014) (Staton, J.) ..................................21, 22

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .....................................................................................13, 18

*Cheren v. Compass Bank*
2012 WL 5381445 (D. Ariz. Nov. 2, 2012) ............................................................8

*Davis v. HSBC Bank Nevada, N.A.*
691 F.3d 1152 (9th Cir. 2012).............................................................................4

*Delarosa v. Boiron, Inc.*
2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) ......................................................23

*Do v. Am. Home Mortg. Servicing, Inc.*
2011 WL 5593935 (C.D. Cal. Nov. 17, 2011)......................................................21

*Dougherty v. City of Covina*
654 F.3d 892 (9th Cir. 2011)..............................................................................24

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011)........................................................................22, 23

*Flores v. Jewels Mktg. & Agribusiness*
2007 WL 2022042 (E.D. Cal. July 9, 2007)............................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Forcellati v. Hyland's, Inc.*
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................ 6

*Garrison v. Whole Foods Mkt. Grp., Inc.*
2014 WL 2451290 (N.D. Cal. June 2, 2014) ............................................... 23

*Gonzalez v. Planned Parenthood of Los Angeles*
759 F.3d 1112 (9th Cir. 2014) ...................................................................... 6

*Howell v. Grindr, LLC*
2015 WL 9008801 (S.D. Cal. Dec. 15, 2015) ............................................ 12

*Kim Laube & Co. v. Wahl Clipper Corp.*
2013 WL 12084741 (C.D. Cal. Mar. 8, 2013) .............................................. 9

*Kissel v. Code 42 Software, Inc.*
8:15-CV-01936 (C.D. Cal. Apr. 14, 2016) (Staton, J.) ............................... 22

*Klein v. Avis Rent a Car Sys. Inc.*
2009 WL 151521 (C.D. Cal. Jan. 21, 2009) ............................................... 22

*Machlan v. Proctor & Gamble Co.*
77 F. Supp. 3d 954, 959-960 (N.D. Cal. 2015) .......................................... 23

*Marino v. Countrywide Fin. Corp.*
26 F. Supp. 3d 955, 960 (C.D. Cal. 2014) (Staton, J.) ................................. 6

*Robbins v. Hyundai Motor Am.*
2014 WL 4723505 (C.D. Cal. Aug. 7, 2014) (Staton, J.) ............................. 6

*Ruiz v. Bally Total Fitness Holding Corp.*
447 F. Supp. 2d 23 (D. Mass. 2006) ..................................................... 12, 14

*Sauro v. LA Fitness Int'l LLC*
2013 WL 978807 (D.N.J. Feb. 13, 2013) ..................................................... 9

*Thieme v. Cobb*
2016 WL 3648531 (N.D. Cal. July 8, 2016) ............................................... 21

*Tigbao v. QBE Fin. Inst. Risk Servs., Inc.*
2014 WL 5033236 (C.D. Cal. July 24, 2014) (Staton, J.) ........................... 22

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3
*U.S. v. Mednansky*

4
   2011 WL 844956 (S.D. Cal. Mar. 8, 2011) ................................................................ 8

5
*Van Patten v. Vertical Fitness Grp., LLC*

6
   847 F.3d 1037 (9th Cir. 2017)......................................................................... 21

7
*Wang v. OCZ Tech. Grp. Inc.*

8
   276 F.R.D. 618 (N.D. Cal. 2011) ............................................................ 23, 24

9
*Wendt v. 24 Hour Fitness USA, Inc.*
   2015 WL 1344819 (N.D. Tex. Mar. 24, 2015), *aff'd*, 821 F.3d 547 (5th

10
   Cir. 2016)............................................................................................. 12, 15, 16

11
**CALIFORNIA CASES**

12
*Adelman v. Spark Networks, Ltd.*

13
   2008 WL 2108667 (Cal. Ct. App. 2d May 20, 2008) ........................................ 12, 13

14
*Beck v. Arthur Murray, Inc.*

15
   245 Cal. App. 2d 976 (Ct. App. 1966)......................................................... 13

16
*Kasky v. Nike, Inc.*

17
   27 Cal. 4th 939 (2002) ................................................................................ 20

18
*Pickering v. 24 Hour Fitness USA, Inc.*

19
   CGC-05-446492 (Cal. Super. Ct. S.F. Cty. June 8, 2009)............................ passim

20
**OTHER CASES**

21
*DeRiso v. Synergy USA*

22
   6 A.D.3d 152 (N.Y. App. Div. 1st Dep't 2004) ............................................ 15, 16, 17

23
*Melino v. Equinox Fitness Club*
   6 A.D.3d 171 (N.Y. App. Div. 1st Dep't 2004) ............................................ 12, 14, 16

24
*Sokoloff v. Town Sports Int'l, Inc.*

25
   6 A.D.3d 185 (N.Y. App. Div. 1st Dep't 2004) ............................................ 15, 20

26
**CALIFORNIA STATUTES**

27
Cal. Bus. & Prof. Code § 17204 .................................................................... 21

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Civ. Code § 1694.4 ................................................................................ 12

Cal. Civ. Code § 1812.80 .............................................................................. 10

Cal. Civ. Code § 1812.82 .......................................................................... 7, 20

Cal. Civ. Code § 1812.84(a) ......................................................................... 22

Cal. Civ. Code § 1812.84(b) .................................................................... 18, 19

Cal. Civ. Code § 1812.85(b)(1) ............................................................... 16, 17

Cal. Civ. Code § 1812.89(2) ......................................................................... 15

Cal. Civ. Code § 1812.93 ............................................................................... 8

Cal. Civ. Code § 1812.94 .............................................................................. 14

**OTHER STATUTES**

N.Y. Gen. Bus. Law § 628 ............................................................................ 14

**OTHER AUTHORITIES**

Merriam-Webster Online Dictionary,
   http://www.merriam-webster.com (Oct. 13, 2016) ..................................... 7

## I.     **INTRODUCTION.**

SoulCycle Inc. ("SoulCycle" or the "Company") is a fitness company that sells indoor group cycling classes ("Classes").  It is not a traditional gym offering memberships; rather, SoulCycle offers its customers (called "riders") the opportunity to buy one Class at a time, or a series of Classes without entering into any long-term membership contract.  Riders can buy as many or as few Classes as they like.

Plaintiff Marko Cavka ("Cavka") chose to buy a single Class on SoulCycle's website.  On its website, SoulCycle displays its Terms and Conditions ("Terms"), to which all customers, including Cavka, must agree prior to purchase, as well as Frequently Asked Questions ("FAQs").  The FAQs disclosed, among other things, riders' right to cancel Classes they have purchased.  During the purchase process, SoulCycle prominently discloses that its Classes have expiration dates and the term during which the rider must use the Class.  A customer can choose to print the Terms, the FAQs, or other web screen shots at any time, and Cavka did, in fact, print the Terms and attach them to each of his three complaints.

Cavka does not allege that he: (1) was not provided with the Terms prior to purchase, or that he was prevented from printing the Terms, FAQs or web screen shots off of his computer; (2) was unaware of the expiration date associated with his Class; (3) asked SoulCycle for a refund of his Class and was refused, or he attempted to use his Class, but was prevented from doing so, or that he asked SoulCycle to extend the Class expiration date and was refused; (4) signed a waiver, which SoulCycle then enforced against him; or (5) became disabled, could not use his Class and that he then asked SoulCycle for a refund and was refused.

Nevertheless, Cavka mischaracterizes SoulCycle's business model and attempts to transform his purchase of a single Class into a putative nationwide class action for purported technical violations of provisions of the California Health Studio Services Contract Law ("HSSCL") that do not apply to Cavka's experience,

1  as well as violations of the "unlawful" prong of California's Unfair Competition
2  Law ("UCL").  Specifically, Cavka attempts to capitalize on the following technical
3  provisions of the HSSCL, which he assumes apply to SoulCycle, and which he
4  claims were violated:  (1) SoulCycle allegedly did not provide him a copy of his
5  contract; (2) the expiration date for his Class was allegedly not displayed in 14
6  point font "above the space reserved for the signature"; (3) he allegedly was not
7  told of his rights of cancellation; (4) SoulCycle allegedly requires customers to sign
8  a waiver (that he does not allege he signed), and (5) disabled customers (which
9  Cavka does not allege he was) are supposedly not informed of their refund rights.

10       This is Cavka's third attempt to state a claim for these supposed violations.
11  SoulCycle moved to dismiss Cavka's first complaint, which Cavka abandoned in
12  response.  This Court rejected Cavka's second attempt, dismissing his claims for a
13  lack of statutory standing.  Now, in his third pleading attempt, the "SAC," Cavka's
14  allegations still fail for two independent reasons.

15       First, Cavka has not alleged facts to show that SoulCycle violated two of the
16  HSSCL provisions upon which he sues.  Specifically, SoulCycle gave Cavka a copy
17  of the contract, in compliance with the HSSCL, when it made that contract
18  available to him upon the purchase of his Class.  SoulCycle provided the contract
19  electronically, via the website, and Cavka could have printed it had he chosen to do
20  so.  Even if one assumes, for the sake of argument only, that the contract provided
21  failed to comply with the HSSCL in other respects, these allegations are insufficient
22  to state a claim based on SoulCycle's alleged failure to provide the contract.
23  Additionally, Cavka's claim premised on SoulCycle's requirement that customers
24  sign waivers of personal injury and property before participating in a Class fails for
25  the simple reason that the HSSCL does not prohibit such waivers.  As such, Cavka
26  fails to state a claim as a matter of law.  (*See* Section IV, *infra.*)

27       Second, Cavka lacks standing to pursue claims based on any of SoulCycle's
28  alleged violations of the HSSCL.  Statutory standing under the HSSCL and the

UCL, and standing under Article III requires Cavka to allege an actual injury causally related to the purported violations of the HSSCL.  Cavka fails to allege such an injury.  He does not allege that: (1) he suffered any monetary harm resulting from his decision not to print the contract off the website at the time of his Class purchase; (2) he suffered monetary harm from viewing the clearly disclosed expiration date in whatever font he viewed it in, (3) he tried to cancel his Class, much less that SoulCycle refused his request, (4) he signed a waiver, much less that he attended a Class, or was hurt, or that SoulCycle enforced such a waiver against him, or (5) he became disabled, much less that he asked SoulCycle to refund his money as a result and that SoulCycle refused.  Instead, Cavka alleges that he suffered economic harm because he paid $30 for a Class that he supposedly was unable to attend during the 30 days before it expired.  But, every court that has addressed standing in relation to health club laws has held that payment for a class does not confer standing to sue for unrelated violations, and Cavka's payment of $30 is not causally connected to the alleged HSSCL violations.  The SAC also adds some new, nebulous allegations, made on "information and belief," that Cavka's Class supposedly was worth some unspecified amount "less" than he paid.  These conclusory allegations are insufficient to support standing here.  (*See* Section V, *infra.*)

Because Cavka's UCL claim is predicated entirely on the HSSCL claims for which he lacks standing, Cavka's SAC should be dismissed in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Section VI, *infra*.)

## II.    STATEMENT OF FACTS.

### A.    SoulCycle's Pay-Per-Class Purchase Structure.

SoulCycle offers Classes to its riders.  (SAC ¶ 9.)  To purchase a Class, a rider must create an account.  To do so, customers click affirmatively to signify

/////

/////

their agreement to abide by SoulCycle's Terms.[1]  (SAC ¶ 13, Ex. A ("This policy governs your use of the SoulCycle website . . . and the SoulCycle Mobile Application (the 'App'). . . . ACCEPTANCE OF TERMS  By using the Website or App, you signify your acceptance of the Terms and Conditions.  If you do not agree to this, please refrain from using the Website or App.").)

Unlike health studios where customers buy a membership for a specified period of time, SoulCycle has a "pay-per-class model."  (Request for Judicial Notice in Support of Motion of Defendant SoulCycle Inc. to Dismiss Second Amended Class Action Complaint ("RJN"), Ex. 1, at 4.)  Riders can choose to buy one Class, or they can buy a series of Classes, such as in packs of 5, 10, or 20.  (RJN, Ex. 2.)  The cost of a Class depends on the type of Class purchased, its location, and how many are purchased.  (*See* SAC ¶ 11; RJN, Ex. 2.)  Riders can buy Classes online at soul-cycle.com, using the SoulCycle web application ("App"), or in a studio.  (RJN, Ex. 1, at 70.)  Many riders buy their Classes using the website.  (*See id.* at F-8.)

When a rider buys a Class on the website, he is brought to a screen which asks him to select the number of Classes he would like to purchase (the "Selection Screen").  (RJN, Ex. 2; *see also* SAC ¶ 12.)  Immediately above the "select" button, which one must click to select the Class, SoulCycle clearly discloses the expiration date for the Class as well as the cost.  (RJN, Ex. 2.)  For example, a single Class expires in 30 days.  (*Id.*; *see also* SAC ¶ 11.)  As one might expect, the more Classes a rider buys, the longer the customer has to use them.  (SAC ¶ 11.)  The

---

[1]On February 10, SoulCycle changed its Terms to include additional provisions, including moving the rights of cancellation into that document and it changed its Rider Receipts to display the expiration date of the class, clarify its return policy, and link to the Terms.  This motion focuses upon, however, the Terms as they existed when Cavka purchased his Class, which are attached as Exhibit A to the SAC.  This Court may, pursuant to the Ninth Circuit's "incorporation by reference" rule, take judicial notice of and consider the Terms, "without converting the Rule 12(b)(6) motion into one for summary judgment."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

fact that Classes expire is also disclosed in the Terms, which provide: "You should be aware that classes and series expire . . . ." (SAC, Ex. A at 5.)

At the bottom of the Selection Screen is a hyperlink to SoulCycle's FAQs, which inform customers about SoulCycle's policies, including its cancellation policy. (RJN, Ex. 3 at "What is the cancellation policy for a Tiered Pricing Program purchase?") The FAQ states that "a customer may cancel its Tiered Pricing Program purchase up to five days after the purchase of the series with written notice, unless otherwise provided by applicable law." (*Id.*)

Once a rider selects the number of Classes to buy, he is brought to a screen to pay (the "Payment Screen"). (SAC ¶ 12.) On that screen, the rider must click a box that states that he "understand[s] and accept[s] the **terms and conditions**." (RJN, Ex. 4 (emphasis in original); *see also* SAC ¶ 13.) The bolded phrase "terms and conditions" is a hyperlink that, when clicked, will display the complete Terms. (SAC ¶ 13, Ex. A.) One can then click "print" and print out the Terms if he chooses to do so.

Once a rider buys a Class, SoulCycle e-mails a "Rider Receipt," which memorializes the date of purchase, number of Classes purchased, amount paid, and method of payment. (SAC, Ex. B.) The receipt, as it existed at the time of Cavka's purchase, indicated that for "retail" purchases—meaning the sale of clothing and accessories—SoulCycle did not offer returns and exchanges, and for Class purchases, the receipt indicated that riders should call the studio with any questions. (*Id.*) A customer can then reserve a bike for a Class (sometimes referred to as a "ride" or "rides") at a specific date and time online, with the App, or directly with a SoulCycle studio. (*See* RJN, Ex. 1 at 64, 70.)

### B.   The Plaintiff's Purchase of a Single Class.

Cavka alleges that he bought one Class in July 2016 for $30 through SoulCycle's website. (SAC ¶ 21.) SoulCycle has 13 locations in Southern California. (RJN, Ex. 5.) Cavka claims he was "unable to reserve" a bike for a 45

-5-

1  minute class within 30 days due to unidentified "conflicts with his schedule" that

2  arose at an unspecified time.  (SAC ¶ 26.)  Cavka does not allege that, upon

3  learning of these conflicts, he contacted SoulCycle to cancel the purchase of his

4  Class or to extend the expiration date and that SoulCycle refused.  He does not

5  allege that he tried to use his Class after it expired and that SoulCycle refused.

6  Similarly, Cavka does not allege that he became disabled at any point and that such

7  disability rendered him unable to use his Class.

8  ### III. <u>LEGAL STANDARD.</u>

9  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for

10  lack of subject matter jurisdiction, "the plaintiff has the burden of proving that the

11  court has subject matter jurisdiction." *Robbins v. Hyundai Motor Am.*, 2014 WL

12  4723505, at *2, *8-9 (C.D. Cal. Aug. 7, 2014) (Staton, J.) (internal citations

13  omitted).  "Dismissal for lack of subject matter jurisdiction is appropriate if the

14  complaint, considered in its entirety, on its face fails to allege facts sufficient to

15  establish subject matter jurisdiction." *Marino v. Countrywide Fin. Corp.*, 26

16  F. Supp. 3d 955, 960 (C.D. Cal. 2014) (Staton, J.) (quoting *In re Dynamic Random*

17  *Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008)).

18  Under Federal Rule of Civil Procedure 12(b)(6), "[i]n order to survive

19  dismissal … a complaint must set forth 'more than labels and conclusions, and a

20  formulaic recitation of the elements of a cause of action will not do.'"  *Forcellati v.*

21  *Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1158 (C.D. Cal. 2012) (internal citation

22  omitted).  Although the Court must accept factual allegations as true, "it 'is not

23  bound to accept as true a legal conclusion couched as a factual allegation.'"

24  *Robbins,* 2017 WL 4723505 at *2 (internal citation omitted).  The Court also need

25  not accept assertions contradicted by judicially noticed facts.  *Gonzalez v. Planned*

26  *Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014).

27  /////

28  /////

## IV.   CAVKA FAILS TO STATE A CLAIM FOR CERTAIN VIOLATIONS OF THE HSSCL.[2]

### A.   SoulCycle Gave Cavka the Contract.

When Cavka purchased his Class, the HSSCL required that "[a] copy of the written contract shall be *given* to the customer at the time he signs the contract." Cal. Civ. Code § 1812.82 (emphasis added).  To "give" means "to put into possession of another for his or her use."  ("give," Merriam-Webster Online Dictionary, http://www.merriam-webster.com (Oct. 13, 2016).)  The HSSCL did not mandate that the contract be hand delivered.

SoulCycle "gave" Cavka a copy of the contract upon his purchase of the Class.  When Cavka selected one Class on the Selection Screen, he was informed that it would cost $30 and that it would expire in 30 days.  (*See* SAC ¶¶ 10, 21; *see also* RJN, Ex. 2.)  At the bottom of this web page, SoulCycle provided a hyperlink to SoulCycle's "FAQ," which informed Cavka that "[a] customer may cancel its Tiered Pricing Program purchase up to five days after the purchase of the series with written notice, unless otherwise provided by applicable law."  (RJN, Ex. 3 at "What is the cancellation policy for a Tiered Pricing Program purchase?")

Cavka would have viewed the Payment Screen, where SoulCycle required him to click a box agreeing that he "underst[ood] and accept[ed] the **terms and conditions**."  (RJN, Ex. 4 (emphasis in original); *see* SAC ¶ 13.)  SoulCycle provided a full copy of the Terms via a hyperlink.  (SAC ¶ 13, Ex. A.)  In addition,

---

[2]SoulCycle does not concede that the HSSCL applies to SoulCycle's business model.  The HSSCL was designed to protect against "high pressure sales tactics," as a result of which one may feel "obligated to sign a contract immediately without adequate time" to consider the decision.  *See, e.g.*, Cal. Bill Analysis, S.B. 581 Assem., Sept. 2, 2005 ("Consumers sometimes give into high pressure sales tactics").  That concern is inapplicable here, where the plaintiff bought his single Class on the website and there is no suggestion in the SAC that he did so because SoulCycle forced him to using high pressure sales tactics.
Nevertheless, as Cavka: (a) has not demonstrated that SoulCycle violated certain provisions of the HSSCL; and (b) does not have standing to assert a claim under the HSSCL, SoulCycle is not now challenging the applicability of the HSSCL.  It does, however, expressly reserve all rights to do so, if needed, in the future.

DLA PIPER LLP (US)

1  Cavka acknowledges that after completing his purchase, SoulCycle e-mailed him a

2  "Rider Receipt," which confirmed his purchase of one Class for $30.  (SAC ¶ 22.)

3  When preparing all three of his complaints, Cavka was able to print out the

4  Terms, the Rider Receipt, and the waiver form; he could have printed all of those

5  documents—and the FAQs and web screenshots—at the time of his purchase as

6  well.  As a result, SoulCycle gave (or put into Cavka's possession) the entire

7  contract between SoulCycle and Cavka, which he was free to review, print, and

8  save when and as he saw fit.

9  Although Cavka alleges that the FAQs are not a part of the contract he

10  entered with SoulCycle, (SAC ¶ 15), the Court need not accept that legal

11  conclusion.  *Cheren v. Compass Bank,* 2012 WL 5381445, at *4 (D. Ariz. Nov. 2,

12  2012)*; U.S. v. Mednansky,* 2011 WL 844956, at *3 (S.D. Cal. Mar. 8, 2011) (legal

13  conclusions cast as factual allegations are given no weight).  In *Cheren*, for

14  example, the plaintiffs alleged that certain documents "constitute[d] the binding

15  contract at issue."  2012 WL 5381445, at *4.  The Court disagreed, holding that

16  "[t]his is a legal conclusion couched as a factual allegation, which the Court need

17  not take as true."  *Id.*  Therefore, Cavka's assertion that SoulCycle violated the

18  HSSCL by failing to give him a copy of the contract at the time of his purchase

19  must be dismissed.

20  **B.     SoulCycle's New Rider Waiver Form Does Not Violate the HSSCL.**

21  Cavka's allegation that SoulCycle violated the HSSCL by requiring riders to

22  execute waivers (*see, e.g.*, SAC ¶ 41(d)), must be dismissed for failure to state a

23  claim because the HSSCL does not prohibit SoulCycle from seeking a waiver for

24  personal injuries, valuables, and personal property.  Quite the contrary, the HSSCL

25  only prohibits a health studio from obtaining a waiver "of the provisions *of this*

26  *title*," meaning the HSSCL.  Cal. Civ. Code § 1812.93 (emphasis added).

27  Here, SoulCycle's New Rider Waiver form does not purport to require riders

28  to waive the protections of the HSSCL and it does not mispresent Cavka's rights;

DLA Piper LLP (US)

-8-

MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
8:16-CV-01821 JLS (KESx)

1  quite the contrary, it simply requires riders to acknowledge that they have assumed

2  the risk for participating in the Class and release SoulCycle for personal injuries or

3  property loss related to participation in the Classes.  (*See* SAC, Ex. C.)  Cavka's

4  allegation that the New Rider Waiver form requires riders to "waive certain

5  [unidentified] provisions of the HSSCL" (SAC ¶ 18(d)) should be given no weight,

6  as the meaning of the waiver is a legal question, not a fact.  *See, e.g.*, *Kim Laube &*

7  *Co. v. Wahl Clipper Corp.*, 2013 WL 12084741, at *10 (C.D. Cal. Mar. 8, 2013)

8  ("the meaning of contract language, including a release, is a legal question")

9  (internal citations omitted).

10       In addressing the separate issue of standing (rather than failure to state a

11  claim), the Court questioned whether the language purporting to release "SoulCycle

12  from liability for any claims 'arising out of or *in any way related to* participation in

13  the Classes or *use* of the Facilities,'" could operate as an attempt to waive the

14  protections of the HSSCL.  (Dkt. 39 at 6.) (emphasis in original).  Reading the

15  clause in its entirety, however, demonstrates that it cannot:  it reads "*to the fullest*

16  *extent allowed by law* arising out of or in any way related to participation in the

17  Classes or use of the Facilities."  (SAC, Ex. C.) (emphasis added).  Since the law

18  does not allow a waiver of the HSSCL provisions, the explicit language of the New

19  Rider Waiver Form makes plain that it does not purport to waive the protections of

20  the HSSCL.  *Flores v. Jewels Mktg. & Agribusiness*, 2007 WL 2022042, at *7

21  (E.D. Cal. July 9, 2007).

22       In *Flores*, for example, the plaintiffs argued that an arbitration clause was

23  unenforceable based on the theory that it sought to waive statutory protections

24  under the Perishable Agricultural Commodities Act ("PACA").  2007 WL 2022042,

25  at *7.  The Court disagreed because the clause "[wa]s expressly limited to *the extent*

26  *allowed by law* and thus, by its own terms, d[id] not contravene PACA."  *Id.*

27  (emphasis added); *see also Sauro v. LA Fitness Int'l LLC*, 2013 WL 978807, at *7

28  (D.N.J. Feb. 13, 2013) (health club waiver provision stated that members released

1  defendant "from liability 'for any loss or damage … to the fullest extent by law'";

2  court acknowledged that such language "clearly signal[ed] that the waiver [wa]s not

3  absolute and [wa]s only as comprehensive as [wa]s permitted by law").

4  Therefore, the Court should dismiss the claim that SoulCycle's New Rider

5  Waiver form violates the HSSCL for failure to state a claim.

6  **V.    CAVKA LACKS STANDING TO SUE FOR THE ALLEGED
7        VIOLATIONS OF THE HSSCL.**

8  Cavka lacks standing to bring his HSSCL claim because he has not suffered

9  an injury that is causally related to SoulCycle's purported statutory violations.[3]  The

10  California Legislature has declared that the purpose of the HSSCL is "to safeguard

11  the public . . . by prohibiting or restricting . . . onerous contract terms . . . by which

12  the public *has been injured* in connection with contracts for health studio services."

13  Cal. Civ. Code § 1812.80 (emphasis added).  As this Court has held, "[a]ny buyer

14  *injured* by  a violation of [the HSSCL] may bring an action for recovery of

15  damages."  (Dkt. 39 at 6.) (emphasis in original).  The "California Court of Appeals

16  held that the phrase 'injured by a violation of this title' requires 'an injury *resulting*

17  *from* a violation [of the statute] . . . [A] violation of the statute, without more, is

18  insufficient.'"  *Id.* at 6-7 (emphasis in original) (quoting *Boorstein v. CBS*

19  *Interactive, Inc.*, 165 Cal. Rptr. 3d 669, 676 (Ct. App. 2013)).  "[T]he intent of the

20  HSS[CL] is to prevent *harm* to consumers who enter into health studio contracts."

21  (Notice of Lodgment and Lodgment of Foreign Authorities in Support of Motion of

22  Defendant SoulCycle Inc. to Dismiss Second Amended Complaint, Ex. A,

23  (Statement of Decision, *Pickering v. 24 Hour Fitness USA, Inc.*, CGC-05-446492

24  (Cal. Super. Ct. S.F. Cty. June 8, 2009) ("*Pickering* Statement of Decision") at 6.)[4]

25

26  [3]Because he fails to allege injury in fact that is "fairly traceable" to the alleged HSSCL violations, Cavka also lacks Article III standing to pursue HSSCL claims,

27  for all of the reasons set forth in SoulCycle's motions to dismiss Cavka's previous complaints, which are incorporated herein by reference.  (*See* Dkt. 22 at 16-18; Dkt. 33-1 at 19-22.)

28  [4] While district courts in California "generally decline to consider an unpublished

-10-

Thus, to establish standing under the HSSCL, Cavka "must plausibly allege that (1) he sustained actual damages (2) caused by SoulCycle's [alleged] violations of the HSSCL. (Dkt. 39 at 7.) The SAC continues to fail to allege an actual injury that is causally connected to the HSSCL violations Cavka alleges.

In *Pickering*, the Court dismissed a putative class action brought for "alleged technical violations of the HSSCL" due to lack of standing "because [the plaintiff] ha[d] not demonstrated that she was caused any injury as a result of any alleged technical violations." (*Id.* at 5-6.) There, the plaintiff had entered into a contract for four personal training sessions that expired after six months. (*Id.* at 1-2.) She "did not attempt to use any of her training sessions" and did not receive a refund for the money she paid. (*Id.* at 3.) Pickering argued that the contract violated the HSSCL because the contract did not: (a) state the expiration date in 14 point or larger font; (b) include a provision that services would begin within six months of the contract; and (c) state the entity to whom the cancellation notice should be sent. (*Id.* at 4.) The Court dismissed the complaint because "[t]he evidence . . . demonstrate[d] that even if technical provisions were not strictly complied with . . . there was no harm caused to Pickering as a result of the alleged deficiencies." (*Id.* at 6.)

The *Pickering* decision is consistent with numerous decisions under other states' similar statutes that have repeatedly held that "a plaintiff lacks standing to sue under the state's version of a health club act when the plaintiff cannot allege

---

California decision when there is other published persuasive or binding authority on which to rely[,] . . . when there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, 2015 WL 4163008, at *12 n.24 (C.D. Cal. July 9, 2015) (citing *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)) (stating that the Court "may consider unpublished state decisions, even though such opinions have no precedential value" and that unpublished opinions may still "lend[] support" to a certain position regarding California law). Because our research has not located any other authority deciding standing under the HSSCL, it is proper for the Court to consider this unpublished decision in its analysis.

injury, even if the contract violates the act." *Wendt v. 24 Hour Fitness USA, Inc.*, 2015 WL 1344819, at *2 (N.D. Tex. Mar. 24, 2015), *aff'd,* 821 F.3d 547 (5th Cir. 2016) (dismissing claim for lack of standing under the Texas Health Spa Act ("THSA")); *see also Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 28-29 (D. Mass. 2006) (plaintiff's claim for violation of the Massachusetts Health Club Act ("MHCA") failed due to lack of standing); *Melino v. Equinox Fitness Club*, 6 A.D.3d 171, 172 (N.Y. App. Div. 1st Dep't 2004) (upholding grant of motion to dismiss due to lack of standing under the New York Health Club Services Law ("NYHCSL") because plaintiff did not allege "that she . . . sustained loss or damage because of the alleged discrepancies between the contract and the [NYHCSL]").

### A.    Cavka's Allegation that He Paid for An Allegedly Void Contract Does Not Confer Standing.

This Court has ruled that the mere fact that Cavka paid for a contract that allegedly violates the HSSCL (and is therefore allegedly void) does not, alone, constitute injury sufficient to confer statutory standing.  (*See* SAC ¶¶ 19, 24; Dkt. 39 at 8 (holding Cavka lacked standing); *see also Howell v. Grindr, LLC*, 2015 WL 9008801, at *4 (S.D. Cal. Dec. 15, 2015) (plaintiff did not allege statutory standing merely by alleging statutory violations that would make contract void and unenforceable); *accord Wendt,* 2015 WL 1344819, at *3-6 ("[a]ssuming without deciding that Plaintiffs' contracts are void because they violate the [Texas Health Spa Act], Plaintiffs must still allege injury in order to have standing to sue"; finding no standing); *Adelman v. Spark Networks, Ltd.*, 2008 WL 2108667, at *8 (Cal. Ct. App. 2d May 20, 2008) (finding no standing under Cal. Civ. Code § 1694.4, which governs dating service contracts; allegation that the contract was "void and unenforceable" was insufficient).

In his third complaint, Cavka now claims he was harmed because his Class supposedly was worth "significantly less" than he paid.  (SAC ¶ 25.)  Cavka's

1   conclusory allegations fail to establish standing.  Our research has not located any

2   authority holding that a vague and conclusory statement that classes were worth

3   "less" because of an alleged HSSCL violation is sufficient to confer statutory

4   standing under the HSSCL.  *Cf. Beck v. Arthur Murray, Inc.*, 245 Cal. App. 2d 976,

5   982 (Ct. App. 1966) (holding that proper measure of damages under the HSSCL's

6   predecessor act was "the difference between the amount paid and the value of that

7   received[,]" but finding plaintiff failed to establish classes were worth less than she

8   paid, even if defendant violated the statute).  Here, Cavka's claim that his contract

9   was worth "less" *because of* the various HSSCL violations he alleges is nothing

10  more than a legal conclusion that need not be credited by the Court, and he alleges

11  no facts to support it.  *See, e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 665 (2009) ("A

12  court considering a motion to dismiss may begin by identifying allegations that,

13  because they are mere conclusions, are not entitled to the assumption of truth.");

14  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (" …Factual allegations

15  must be enough to raise a right to relief above the speculative level…")(citations

16  omitted); *Adelman*, 2008 WL 2108667, at *7 (rejecting argument that the value of a

17  contract that allegedly failed to comply with statute was worth "less" as a matter of

18  law).

19          Indeed, in support of these new allegations, Cavka does not allege a single

20  fact demonstrating that his Class was worth "less" because of the HSSCL violation.

21  Instead, he pleads "on information and belief" that  SoulCycle charges an

22  unspecified "premium," which supposedly is "significantly higher" than

23  unidentified "heath studios" offering "similar services" in the "same locations" as

24  SoulCycle, but he fails to detail what the alleged premium is, the identity of these

25  alleged other providers, and, most importantly, he fails to allege facts showing that

26  the alleged "premium" is attributable in some way to the alleged HSSCL violations.

27  (SAC ¶ 25.)  Cavka also claims that SoulCycle "bills itself as 'exclusive'" and

28  allegedly "market[s]" itself to affluent clients.  (SAC ¶ 25.)  These allegations are

irrelevant to the alleged HSSCL violations and Cavka fails to tie them in any way to a claim that the Class he received was worth less than $30 *because of* the alleged HSSCL violations.  As a result, Cavka's allegations are not sufficient to confer statutory standing.

> **B.    Cavka Did Not Execute the New Rider Waiver Form, Did Not Attend a Class, Was Not Hurt, and Was Not Thwarted in An Attempt to Hold SoulCycle Liable.**

As explained above, the New Rider Waiver form does not violate the HSSCL.  Even if it did, (which it does not), Cavka lacks standing to assert a claim based on the New Rider Waiver form because:

- He has not alleged that he signed the waiver; indeed, the New Rider Waiver form he attached to the SAC is unsigned (SAC, Ex. C);
- He has not alleged that he attended a Class; indeed, he alleges he was "unable" to do so (SAC ¶ 25);
- He has not alleged he was hurt while attending a Class;
- He has not alleged that he attempted to hold SoulCycle liable as a result of an injury suffered during a Class; and
- He has not alleged that SoulCycle enforced the New Rider Waiver form.

This situation is analogous to *Melino*, where the plaintiff alleged defendant violated the NYHCSL[5] because the contract "purport[ed] to exempt defendant from liability for its own negligence."  6 A.D.3d at 172.  The Court granted the defendant's motion to dismiss because the "Plaintiff d[id] not allege that she ever attempted to . . . hold defendant liable for negligence, but was prevented from doing so because of the contract."  *Id.*; *see also Ruiz*, 447 F. Supp. 2d at 26, 29 (rejecting

---

[5]The HSSCL and the NYHCSL have almost identical damages provisions. *Compare* Cal. Civ. Code § 1812.94 ("Any buyer injured by a violation of this title may bring an action for the recovery of damages.  Judgment may be entered for three times the amount at which the actual damages are assessed plus reasonable attorney fees") *with*  N.Y. Gen. Bus. Law § 628 ("Any buyer damaged by a violation of this article may bring an action for recovery of damages.  Judgment may be entered in an amount not to exceed three times the actual damages plus reasonable attorney fees").

1    assertion that defendant's "provision limiting the liability of the health club"

2    violated the MCHA because plaintiff's "failure … to allege any injury caused

3    thereby deprive[d] her of standing").

4        So too, here.  Cavka has not alleged that he ever executed the waiver,

5    attended a Class, or got hurt, much less that SoulCycle then enforced the waiver

6    against him.  Instead, Cavka's only asserted economic "injury" is that he paid $30

7    for a Class that he supposedly was "unable" to attend during its 30 day expiration

8    period and that he claims was worth "less" than he paid.  (SAC ¶¶ 25-26.)  The

9    Court has found that the expiration date does not violate the HSSCL.  (Dkt. 39 at 8

10   n.3 ("the HSSCL does not bar health studios from establishing time periods for

11   using prepaid classes").)  As previously discussed, Cavka's conclusory allegations

12   that his Class was worth "less" are insufficient and Cavka's payment of money is

13   not an "injury" causally connected to the allegedly illegal waiver, and thus does not

14   confer standing to pursue such a claim.  *See Sokoloff v. Town Sports Int'l, Inc.*, 6

15   A.D.3d 185, 186 (N.Y. App. Div. 1st Dep't 2004) (affirming dismissal for lack of

16   standing where plaintiff asserted contract's limitation of liability violated the

17   NYHCSL, but alleged no injury other than payment of membership fees); *see also*

18   *DeRiso v. Synergy USA*, 6 A.D.3d 152, 153 (N.Y. App. Div. 1st Dep't 2004).

19   Cavka has not been injured by the New Rider Waiver form and lacks standing to

20   challenge it.

21
**C.    Cavka Has Not Alleged That He Was Disabled, That He Sought to Cancel His Class, or That SoulCycle Refused.**
22

23       Cavka similarly lacks standing to assert that SoulCycle violated the HSSCL

24   by failing to include a provision in its contract explaining its refund policy for

25   individuals with a disability.  Cal. Civ. Code § 1812.89(2).

26       In *Wendt*, for example, the plaintiff asserted a violation of the THSA because

27   the contract failed to include required language regarding the refund policy upon

28   disability.  2015 WL 1344819 at *5.  The plaintiff, however, "did not die or become

DLA Piper LLP (US)

1   disabled during his membership so he did not seek a refund based on death or

2   disability." *Id.* at *6.  Given these facts, the Court held that "[r]egardless of alleged

3   deficiencies in the contractual language," the plaintiff did "not assert facts showing

4   injury other than the money paid to 24 Hour in order to access a gym[,]" and this

5   did not constitute "injury" because plaintiff received exactly what he paid for –

6   access to the gym.  *Id.*; *see also DeRiso*, 6 A.D.3d at 153.

7          The same result follows here.  Cavka does not allege that he became

8   disabled, or sought a refund based on his disability, or that SoulCycle refused him a

9   refund.  Without such allegations, Cavka lacks standing to sue for a purported

10  technical violation of the HSSCL's requirement to include information regarding

11  the refund policy for disabilities in health studio contracts.

12          **D.     Cavka Has Not Alleged That He Sought to Cancel His Class and
                     That SoulCycle Refused.**

13

14          Cavka similarly lacks standing to assert that SoulCycle violated the HSSCL

15  by failing to include certain language near his signature line notifying him of his

16  right to cancellation.  Cal. Civ. Code § 1812.85(b)(1).[6]  In its motion to dismiss the

17  FAC, SoulCycle established that Cavka's FAC was analogous to the complaint in

18  *Pickering*, where the Court held that the plaintiff lacked standing to assert such a

19  claim because "she did not attempt to cancel her contract within the 3-day period,"

20  and therefore "was not caused harm by the alleged defect."  (*Pickering Statement of*

21  *Decision* at 6); *see also Melino*, 6 A.D.3d at 172-173 (upholding dismissal of

22  plaintiff's claim under the NYHCSL for alleged failure to properly disclose

23

---

24  [6] Cavka's allegation that his receipt misrepresented SoulCycle's return policy
    misses the mark.  (SAC ¶ 14.)  As evidenced by the example receipt attached to the
25  SAC, SoulCycle's statement at that time that it did not offer returns was, by its
    terms, limited to "retail," which refers to one's purchase of retail merchandise such
26  as clothing and accessories.  (SAC, Ex. B.)  As to the sale of Classes, riders with
    questions are instructed to call a studio.  (*Id.*)  There is no indication that, to the
27  extent he was confused about his cancellation options, Cavka ever called a studio or
    that, in response, SoulCycle refused to permit cancellation or misled Cavka in any
28  way.

cancellation rights because plaintiff "d[id] not allege that she ever attempted to cancel the contract"); *DeRiso*, 6 A.D.3d at 153 (rejecting NYHCSL claim based on failure to include cancellation language due to lack of standing).

This Court agreed, and held that Cavka lacked statutory standing under the HSSCL due to his failure to allege that he attempted to cancel his contract.  (Dkt. 39 at 8.)  In response, Cavka now alleges that he did not seek to cancel his contract because there were "unforeseen conflicts" with his schedule that precluded him from using his Class "within 30 days," and he claims that that "if SoulCycle had included" cancellation information in the Terms (rather than the FAQs), he "would have exercised his statutory rights and cancelled" the contract.  (SAC ¶ 26.)  This belated attempt to manufacture standing fails for at least three reasons.

First, SoulCycle's FAQs clearly disclosed that Cavka could cancel his contract up to five days after the purchase of his Class with written notice, unless otherwise provided by applicable law.  (*See* SAC ¶¶ 15-16; RJN, Ex. 3.)  Second, Cavka only had a statutory right of cancellation for five business days; after that, he had no statutory right under the HSSCL to cancel.  *See* Cal. Civ. Code § 1812.85(b)(1).  Notably absent from Cavka's new allegations is any assertion that these supposed "unforeseen conflicts" arose within five business days of his purchase such that Cavka would have sought to cancel his Class within five business days.  Given that this Court commented on the lack of such an allegation in its Opinion, presumably Cavka would have made such an allegation were it true.  Third, in light of SoulCycle's express statement in the FAQs that it will cancel a rider's contract and return his money upon request, Cavka cannot allege—and has not in fact alleged—that if he had asked SoulCycle to cancel his Class purchase, it would have refused.  As a result, Cavka has not cured his pleading deficiency and he lacks standing.

Next, Cavka unsuccessfully attempts to meet the HSSCL's statutory standing requirements through a new claim (not asserted in his prior two complaints) that he

1  suffered emotional distress as a result of SoulCycle's alleged failure to inform him

2  of his right to cancel his Class purchase.  (*See* SAC ¶ 26.)

3       SoulCycle was unable to locate any authority holding that vague and

4  conclusory allegations of frustration, annoyance, and anxiety are sufficient to

5  confer standing under the HSSCL.  Moreover, to survive a motion to dismiss, a

6  complaint must contain sufficient factual matter to "state a claim to relief that is

7  plausible on its face."  *Iqbal*, 556 U.S. at 678.  Conclusory allegations "are not

8  entitled to the assumption of truth."  *Id.* at 679-81.  A pleading that merely offers

9  "labels and conclusions," or "naked assertions" will not be sufficient to state a

10  claim upon which relief can be granted.  *Id.* at 678.

11       Here, Cavka's bald and conclusory allegations of emotional distress do not

12  contain the factual enhancements necessary to nudge his claim that he suffered

13  emotional distress "across the line from conceivable to plausible," as is

14  required.  *See Twombly*, 550 U.S. at 545-546, 570 ("Factual allegations must be

15  enough to raise a right to relief above the speculative level"); *Iqbal*, 556 U.S. at 678

16  ("Threadbare recitals of the elements of a cause of action, supported by mere

17  conclusory statements, do not suffice.").  Particularly given that the FAQs clearly

18  disclose the right of cancellation and Cavka's rider receipt encourages him to call a

19  SoulCycle studio should he have any questions, (RJN, Ex. 3; SAC, Ex. B), it is

20  simply not plausible that Cavka suffered emotional distress from his supposed

21  inability to cancel his $30 Class purchase.  (*See* SAC ¶¶ 15-16.)  Accordingly, his

22  claim for relief under the HSSCL fails.

23      **E.**   **Cavka Has Not Alleged Injury Due to Purportedly Improper Font
24  Size In Displaying His Contract Length.**

25       Cavka does not have standing to allege that his contract failed to contain a

26  statement in "at least 14-point type that disclose[d] the length of the term of the

27  contract . . . above the space reserved for the signature."  Cal. Civ. Code

28  /////

§ 1812.84(b).[7]  Although Cavka alleges that SoulCycle failed to disclose the term of the contract in a "certain font" and "location," (SAC ¶ 18(b)), Cavka acknowledges, as he must, that SoulCycle in fact informed him of the length of time he had to use his Class: 30 days.  (*See* SAC ¶ 11.)  As is evident from reviewing the Selection Screen that Cavka would have seen before making his purchase, SoulCycle disclosed that his Class "[e]xpires in 30 days." (RJN, Ex. 2).  Because this contract was made electronically, rather than on paper, instead of having a "signature" line, Cavka indicated his assent to the contract by clicking on the "select" button on the Selection Screen.  (*Id.*)  The length of the term of the contract—the 30 day expiration date—is conspicuously disclosed immediately above the "select" button.  (*Id.*)  Thus, the evidence demonstrates that SoulCycle did not fail to inform Cavka *at all or actively misinform him* regarding the length of his contract; all that Cavka can allege is that the information was not provided *in the correct location* and *correctly sized font*.  And, Cavka still fails to allege that this alleged technical violation caused him any actual injury.

This situation is analogous to that in *Pickering*, where the plaintiff unsuccessfully attempted to assert a violation of the HSSCL due to the alleged improper font size.  (*Pickering* Statement of Decision at 4.)  The Court rejected the claim because "even if the type size was not correct, no harm was caused to Pickering as a result of the purported type size defect."  (*Id.* at 6.)  So too, here. Cavka has not alleged any injury related to the allegedly improper font size or location of the information regarding contract length.

**F.    Cavka Has Not Alleged That He Was Injured Due to SoulCycle's Purported Failure to Give Him His Contract.**

As explained in Section VI(A), *supra*, SoulCycle gave Cavka the contract and he fails to state a claim otherwise.  In any event, Cavka lacks standing to pursue

---

[7] The current version of the statute, effective January 1, 2017, requires "a statement printed in a size at least 14-point type *or presented in an equally legible electronic format*…" (Cal. Civ. Code § 1812.84(b) (emphasis added).

claims that SoulCycle failed to give him his contract upon purchasing his Class as required by California Civil Code section1812.82. As with the other purported HSSCL violations, Cavka has not alleged any actual injury related to his alleged failure to receive a copy of his contract (which is not surprising since SoulCycle gave him a copy of the contract). Quite the contrary, his purported "injury" is that he paid for a Class when SoulCycle did not comply with all technical requirements under the HSSCL. Such a "loss" has already been held insufficient to confer standing. (*See, e.g.*, *Pickering* Statement of Decision at 6 ("[E]ven if technical provisions were not strictly complied with . . . there was no harm.")); *Sokoloff*, 6 A.D.3d at 186 ("Such claim impermissibly 'sets forth deception as both act and injury.'")

## VI. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE UCL.

### A. Cavka's UCL Claim Must Be Dismissed Because It Is Solely Predicated on Violations of the HSSCL, Which Fail.

To state a claim under the "unlawful" prong of the UCL, a plaintiff must allege a violation of some other law. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). Here, Cavka predicates his claim that SoulCycle acted "unlawful[ly]" upon alleged violations of the HSSCL. (SAC ¶ 49.)[8] Cavka's HSSCL claims, however, must be dismissed for lack of standing. (*See* Section V, *supra*.) As a result, any claim of "unlawful" conduct based on the supposed violation of those laws necessarily fails as well. *See, e.g.*, *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) (Staton, J.) ("Plaintiffs' UCL claim 'stands or falls depending on the fate of the antecedent substantive causes of action.'").

/////

---

[8] To the extent the SAC attempts to assert a violation of the unfair prong, it fails because Cavka simply recites the legal standard without stating factual allegations in an attempt to support the legal conclusions he seeks to draw. (SAC ¶ 51 ("SoulCycle's acts or omissions as alleged herein are unfair because the utility of the conduct is outweighed by the gravity of the harm it causes" and "because it offends public policy and/or is unethical, oppressive, unscrupulous, and substantially injurious to consumers.").)

**B.     In Any Event, Cavka Has Not Alleged Standing Under the UCL.**

Even if Cavka stated a UCL claim, (which he did not), to have standing to sue under that statute, a plaintiff must have "suffered injury in fact and . . . lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code § 17204.  As the Ninth Circuit has explained, "[t]his economic injury requirement is 'more restrictive than federal injury in fact' because it encompasses fewer kinds of injuries."  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017).  "Plaintiffs must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'"  *Id.* (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011) (emphasis in original)); *accord  Ballard v. Bank of Am., N.A.*, 2014 WL 503143, at *2 (C.D. Cal. Jan. 28, 2014) (Staton, J.) (quoting *Kwikset Corp,* 51 Cal. 4th at 323).

"When a UCL action is based on an unlawful business practice . . . there must be a causal connection between the harm suffered and the unlawful business activity."  *Thieme v. Cobb*, 2016 WL 3648531, at *6 (N.D. Cal. July 8, 2016) (quoting *Daro v. Superior Court*, 151 Cal App. 4th 1079, 1099 (2007)); *see also Do v. Am. Home Mortg. Servicing, Inc.,* 2011 WL 5593935, at *5 (C.D. Cal. Nov. 17, 2011) (plaintiff must "prove that the alleged unfair business practice caused the plaintiff harm").  The necessary "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Thieme*, 2016 WL 3648531, at *6; *Do*, 2011 WL 5593935, at *5.

Cavka lacks standing to assert a UCL claim here because his alleged economic injury—that he lost the amount he paid for his Class because he did not use it before it expired and/or that he paid for a Class that was worth "less" than what he actually paid (SAC ¶ 26)—has no causal relationship whatsoever to the

/////

purported technical violations of the HSSCL (as detailed above in Section V).[9]  *Cf.* Civil Minutes – General at 16-17, *Kissel v. Code 42 Software, Inc.*, 8:15-CV-01936 (C.D. Cal. Apr. 14, 2016) (Staton, J.) (plaintiff had standing under the UCL where the allegedly unlawful conduct was failure to comply with statutory requirements relating to imposition of automatic renewal terms and the alleged injury was the charge imposed through automatic renewal).  Ultimately, Cavka seeks to have his payment of $30 act as injury, even though he would have paid that sum of money regardless of whether SoulCycle had complied with the purportedly violated sections of the HSSCL.  In such a situation, Cavka does not have standing under the UCL, and his claim must be dismissed.  *See, e.g.*, *Ballard*, 2014 WL 503143, at *2; *Klein v. Avis Rent a Car Sys. Inc.*, 2009 WL 151521, at *4 (C.D. Cal. Jan. 21, 2009).

## VII.   CAVKA LACKS STANDING TO SEEK INJUNCTIVE RELIEF.

"Plaintiffs must show standing with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).  To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.  *Tigbao v. QBE Fin. Inst. Risk Servs., Inc.*, 2014 WL 5033236, at *2-3 (C.D. Cal. July 24, 2014) (Staton, J.) (rejecting standing for injunctive relief) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  As such, the Ninth Circuit has explained that to seek injunctive relief, the

/////

---

[9]To the extent Cavka is attempting to state a claim based on the expiration date of his Class, that claim fails because expiration dates are required under the HSSCL. Cal. Civ. Code § 1812.84(a) (contracts for health studios may not "exceed three years"); *Pickering* Statement of Decision at 7 ("[T]he insertion of an expiration provision is not only *not* unfair or unconscionable; it is mandated by law.") (emphasis in original).

-22-

1  plaintiff must allege "a sufficient likelihood that he will again be wronged in a

2  similar way." *Ellis*, 657 F.3d at 979.

3       For example, in *Delarosa v. Boiron, Inc.*, the plaintiff sought injunctive relief

4  for a UCL false advertising claim.  2012 WL 8716658, at *4 (C.D. Cal. Dec. 28,

5  2012) (Staton, J.).  This Court held that the plaintiff did not have standing to seek

6  injunctive relief; because the plaintiff did "not intend to purchase [the product]

7  again, there [wa]s not a 'sufficient likelihood that she w[ould] again be wronged in

8  a similar way.'"  *Id.*; *see also Wang v. OCZ Tech. Grp. Inc.*, 276 F.R.D. 618, 626

9  (N.D. Cal. 2011) (rejecting standing to seek injunctive relief for UCL claim because

10  plaintiff could not demonstrate future injury even though defendant "maintain[ed]

11  the same marketing materials and website pages and thereby continue[d] to violate

12  the false advertising laws").

13       The same result follows here.  In the SAC, Cavka now alleges that he "would

14  be willing to enter into an agreement with SoulCycle for future indoor cycling

15  classes" if SoulCycle "modifie[d] its contracting process to comply with the law,"

16  (SAC ¶ 27), but there is no risk of Cavka being injured by SoulCycle's alleged non-

17  compliance with the HSSCL in the future if the only circumstance under which

18  Cavka would ever buy another SoulCycle Class is if SoulCycle complied with the

19  statute.  *See Wang*, 276 F.R.D. at 626 (standing to seek injunctive relief "requires a

20  showing that plaintiff is 'realistically threatened by a *repetition* of the violation.'")

21  (emphasis in original, citation omitted).

22       Furthermore, to the extent Cavka's injury is based on deception—that

23  SoulCycle allegedly misled him regarding certain information that it was required

24  by the HSSCL to provide—"the nature of his alleged injury, *i.e.*, deception, is such

25  that he personally cannot be harmed in the same way again."  *Machlan v. Proctor &*

26  *Gamble Co.*, 77 F. Supp. 3d 954, 959-960 (N.D. Cal. 2015) (rejecting allegation

27  that plaintiff would "love to purchase Defendants' Wipes if they were truly

28  'flushable'" as sufficient to confer injunctive relief standing); *see also Garrison v.*

-23-

1   *Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014)

2   (plaintiff lacked standing to seek injunctive relief because once aware of allegedly

3   concealed information, there was "no danger that they will be misled in the

4   future."); *Anderson v. The Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1235

5   (N.D. Cal. 2015) (plaintiff lacked standing to seek injunctive relief despite pleading

6   that "she would purchase the product in the future if it were properly labeled and

7   did not contain non-natural ingredients").  As such, Cavka does not have standing

8   to assert injunctive relief because "any loss of value" he experienced "has already

9   occurred."  *Wang*, 276 F.R.D. at 626.

10  **VIII.  CONCLUSION.**

11          This is Cavka's third pleading attempt, and the deficiencies of the SAC

12  cannot be cured by further amendment because Cavka simply has not been injured

13  by SoulCycle's alleged conduct.  Accordingly, and for all of the reasons set forth

14  above, the SAC should be dismissed with prejudice.  *Dougherty v. City of Covina*,

15  654 F.3d 892, 901 (9th Cir. 2011) (affirming denial of leave to amend on futility

16  grounds, where plaintiff "failed to allege any facts" in support of a particular legal

17  theory and "could have identified any such fact in his briefing or argument before

18  us, but he did not").

19                                      Respectfully submitted,

20  Dated:  March 20, 2017           DLA PIPER LLP (US)

21                                      By: */s/ Shirli F. Weiss*
                                         _____
22                                         SHIRLI F. WEISS
                                         KEARA M. GORDON
23                                         Attorneys for Defendant SOULCYCLE INC.

24

25

26

27

28  EAST\141109598

DLA PIPER LLP (US)